**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harold Dean JONES,**
**Defendant-Appellant.**

**No. 79–5325.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 19, 1980.
Decided Feb. 12, 1981.

Thomas Stanley, Flint, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Francis Zebot, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before WEICK and JONES, Circuit Judges and DUNCAN, District Judge.[*]

WEICK, Circuit Judge.

Harold Dean Jones appeals from his conviction by a jury and his sentence in the United States District Court for the Eastern District of Michigan on count two of a six count indictment charging receipt of firearms, in violation of 18 U.S.C. § 922(h)(1), on count five, possession of up to eight firearms, in violation of 18 U.S.C. App. § 1202(a)(1), and on count six, possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Jones was sentenced to five years imprisonment and fined $5000 on count two, a concurrent term of two years imprisonment and a $5000 fine on count five and a consecutive term of one year imprisonment and a $3000 fine on count six. He was found not guilty on the other counts of the indictment.

Jones' convictions were based largely upon evidence seized during four separate searches of residences made by police: a search on January 21, 1978 of the residence of Sarah Howard, Jones' girlfriend, two additional searches of Sarah Howard's residence in May of 1978, and a search of Jones' residence on May 26, 1978. Before trial, Jones moved to suppress all the evidence seized during these searches. The District Court, following a hearing on the motion, suppressed certain evidence seized in the search of Jones' residence, but denied the motion as to the search of Sarah Howard's residence and in all other respects. On

[*] Honorable Robert M. Duncan, District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

appeal, Jones contends that the January search of Sarah Howard's residence was illegal. He also contends that the three subsequent searches and seizures were fruits of the first. The government concedes this latter point, and we agree with Jones that the January search was illegal. We accordingly reverse.

## I.

Sometime during the late afternoon or early evening of January 21, 1978, Officer Colin Perry of the Flint, Michigan Police Department, spoke with a confidential informant who told him that there was a "possibility" that Earl Jones, a felony suspect and defendant-appellant Harold Dean Jones' brother, could be found at 327 West Taylor Street, the residence of Sarah Howard, Harold Dean Jones' girlfriend. The informant did not tell Officer Perry why he believed Earl Jones might be at Sarah Howard's home, nor did he indicate exactly when or for how long Earl Jones might possibly be there. Officer Perry, however, believed that Harold Dean Jones was living at 327 West Taylor Street.[1] He also had personal knowledge that at least two years earlier Harold and Earl Jones "used to associate together quite a bit."[2]

Between 8:00 p. m. and 9:00 p. m., or roughly one to three hours after receiving the tip, Officer Perry and five other Flint, Michigan police officers met at 327 West Taylor to look for Earl Jones. The police surrounded the house while Officer Perry went to the front door and knocked. According to Officer Perry's testimony at the suppression hearing, a male voice answered first, asking who was there. Officer Perry said it was the police. After a short pause, a female voice asked if the officers had a warrant. Officer Perry answered that they did. Perry then began to pound "very hard" on the door and to holler, "Police, open the door." No one opened the door.

An officer stationed at the rear of the house called out that there was a man looking out a window. Officer Perry began to kick the door "very hard". Soon thereafter, a female voice stated, "Wait a minute, I'll open the door."

Exactly what happened next was the subject of some dispute at the suppression hearing. Sarah Howard testified that all six officers rushed in the house with guns drawn, searched a carpenter who had been working in the basement, and ordered everyone to sit on a sofa in the living room. She further testified that none of the officers told her that they had a warrant, nor did any officer ask for her consent to search the house. Officer Perry, on the other hand, testified that when Sarah Howard opened the' door, he walked into the house and told her that he had a "warrant for Earl Jones," though he did not specify that the warrant was an arrest warrant and not a warrant to search the house for Earl Jones, that Sarah Howard told Perry that Earl Jones was not at the house, but he could look around if he wanted.

Other officers testified that Perry talked with Sarah Howard in the doorway, not in the house, and that the persons in the house were "boisterous" when Perry talked to them. It is clear from the testimony of all the officers that all were armed, two with shotguns and the others with revolvers, at least one or two had their guns drawn, and all the officers entered the house together with Perry or within seconds of his entering.

Once inside the house, the officers conducted a general search in which they found in "plain view" three rifles in a closet in one bedroom, a pistol between the mattress and boxsprings of a bed in another bedroom, a

---

1. This belief was based on Perry's having seen Harold Dean Jones' car parked in front of the house. Though it is not clear from the record, it appears that Sarah Howard and her infant daughter lived in the house alone at the time of the search. Though Officer Perry did not know it at the time, Harold Dean Jones was the owner of the house.

2. Based on this knowledge, Officer Perry had stopped Harold Dean Jones' motor home a number of times prior to the January search to look for Earl Jones. On no occasion, however, did Perry find Earl Jones in the motor home.

shotgun in a closet inside the main entrance, and a pistol in a shoulder holster on a bed in still another bedroom. In addition to the guns, the officers found and seized a "seal-a-meal" and a kitchen scale. They also checked and called in serial numbers on some stereo equipment to ascertain whether it was stolen. The officers, however, did not find Earl Jones. Harold Dean Jones also was not at the house, though he arrived after the search but before the officers had left.

Both the government and Jones agree that the legality of the January 21, 1978 search depends upon an affirmative answer to either one of two questions: (1) whether the existence of an arrest warrant for Earl Jones authorized entry into Sarah Howard's home, or (2) whether Sarah Howard authorized the search by consenting to it. The District Court answered yes to both, holding that the "police officers entered the residence on the authority of an arrest warrant and with the consent of one of its occupants to search for an individual who was believed to be present." We disagree with the District Court on both questions.

## II.

■ We begin with the obvious—an arrest warrant is not a search warrant. By itself, an arrest warrant signifies no more than there is a reason to believe the person named in the warrant has committed a crime. It is, however, fundamental that government officials cannot invade the privacy of one's home without probable cause for the entry. As a constitutional minimum therefore, an arrest warrant can authorize entry into a dwelling only where the officials executing the warrant have reasonable or probable cause to believe the person

named in the warrant is within.[3] *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

This much the government acknowledges. The government contends, however, that the Flint police officers had probable cause to believe Earl Jones was inside Sarah Howard's residence based on the following: (1) the informant's tip that there was a "possibility" that Earl Jones was at Sarah Howard's residence, (2) Officer Perry's knowledge that Earl and Harold Dean Jones, a couple of years before, "used to associate together quite a bit," (3) a male voice responded to Officer Perry's initial pounding on the door, (4) a police officer saw a male look out a back window of the house sometime after Officer Perry began pounding on the door, and (5) the occupants of the house delayed in opening the door after having been told the officers had "a warrant".

■ We view the facts on which the government relies as suggesting no more than the possibility that Earl Jones was in Sarah Howard's residence. The informant's tip, on its face, indicated no more, and even this tip cannot be given great weight since the informant provided Officer Perry no information by which he could measure its reliability. *See, Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Officer Perry's knowledge that Earl and Harold Jones "used to associate together," even if correct, was based on events occurring at least two years before the search, and in any event, did not justify a belief that Earl Jones, on the evening of the search, was at the home of his brother's girlfriend.[4] That a male voice responded to Officer Perry's knocking, and an officer

---

**3.** *Payton* makes it clear that no more is required where entry is to the residence of the suspect. *Payton*, however, did not answer whether more is required where, as here, entry is to the premises of a third person. *Payton v. New York*, 445 U.S. at 573, 100 S.Ct. at 1378. This court has held that an arrest warrant and probable cause is sufficient, *United States v. McKinney*, 379 F.2d 259 (6th Cir. 1967), but other courts have since held or suggested that more is required. *See e. g., Fisher v. Volz*, 496

F.2d 333, 341–43 (3rd Cir. 1974); *Government of the Virgin Islands v. Gereau*, 502 F.2d 914, 928 (3rd Cir. 1974); *United States v. Cravero*, 545 F.2d 406, 415, 421 (5th Cir. 1976); *United States v. Ford*, 553 F.2d 146, 159 n. 45 (D.C.Cir. 1977). *Wallace v. King*, 626 F.2d 1157 (4th Cir. 1980).

**4.** This is particularly true where Officer Perry knew that Harold and Earl Jones were not always found together. *See* note 2, *supra*.

saw a man look out a window, did not negate the possibility that Earl Jones was inside, but these facts more readily suggest that Harold rather than Earl Jones was in the house since it was the residence of his girlfriend. Finally, we fail to see how Sarah Howard's delay in opening the door would suggest that Earl Jones was present when the occupants had no reason to suspect that it was Earl Jones the police were looking for.

■ To satisfy the probable cause requirement, the police officers did not have to eliminate all possibilities other than that Earl Jones could be found in 327 West Taylor Street. *United States v. Delguyd*, 542 F.2d 346, 351 (6th Cir. 1976). They were required only to have had sufficient trustworthy information to suggest that Earl Jones' presence was more likely than not. Here, however, the facts on which the government relies to show probable cause indicate no more than Earl Jones' presence was not impossible; they certainly do not suggest that it was probable or likely.

The legality of the January 21, 1978 search therefore turns upon whether Sarah Howard authorized the entry by consenting to it. At the outset, we note our acceptance of the District Court's finding that Sarah Howard told the police officers that they could search. Though Sarah Howard testified otherwise, we must accept the District Court's finding unless "clearly erroneous," *United States v. Canales*, 572 F.2d 1182 (6th Cir. 1978), and the District Court was certainly in a better position than are we to judge the credibility of the witnesses and to resolve the conflicts in their testimony.

■ But a search based on consent requires more than the mere expression of approval to the search. As a waiver of the rights provided in the Fourth Amendment, a valid consent must be free and voluntary, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed. 797 (1968). The burden of proving a valid consent was on the government, and as we have repeatedly held, this burden required "clear and positive" proof that the consent was uncontaminated by duress, coercion, or trickery. *United States v. Scott*, 578 F.2d 1186, 1188–89 (6th Cir.), cert. denied, 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182 (1978); *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir. 1977). In the instant case, we believe the government failed to meet its burden, and the District Court's finding that it did is not supported by substantial evidence and is clearly erroneous.

Viewing the "totality of the circumstances" as we must, *Schneckloth v. Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2047, we think the facts admit of only one credible inference: that Sarah Howard's permission to search "was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948). We note first that there were five police officers at the scene, all of them armed, two with shotguns and others with pistols drawn. Sarah Howard's attention to their presence was drawn not by a polite knock on the door, but by Officer Perry's banging "very hard" on the door and hollering, "Police, open the door." From the very beginning, Sarah Howard indicated that she did not intend to volunteer her assistance. She asked the police if they had a warrant, when the police said that they did, she still refused to open the door. It was only until Officer Perry began to kick the door "very hard" that she opened the door. And she extended her permission only after she was told the officers had a warrant for Earl Jones.

■ Given these undisputed facts, we believe it was error to uphold consent from the mere assent to the search. *Kirvelaitis v. Gray*, 513 F.2d 213 (6th Cir.), cert. denied, 423 U.S. 855, 96 S.Ct. 103, 46 L.Ed.2d 80 (1975). The overpowering police presence, the kicking and banging on the door, the assertion of lawful authority, all suggest that Sarah Howard had no real choice other than to let the police search. They did not tell her that she had the right to refuse and

the conduct of the police certainly suggested that no such right existed.

For the foregoing reasons, the judgment of conviction of the District Court is reversed, and the cause is remanded with instructions to dismiss the indictment.