**UNITED STATES of America,**

v.

**Alberto HERNANDEZ, a/k/a Alberto Lopez, Defendant.**

**No. CRIM.A. 99–362.**

United States District Court,
E.D. Pennsylvania.

Nov. 22, 1999.

Terri A. Marinari, U.S. Atty's Office, Philadelphia, PA, for U.S.

Michael Huff, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Alberto Hernandez was charged in a four count indictment of possession with intent to distribute cocaine and marijuana, possession of a firearm during and in relation to a drug trafficking offense, and possession of a firearm by a felon.

Mr. Hernandez filed a motion to suppress his statements and physical evidence which were the result of an allegedly illegal search. Upon consideration of the submissions of the parties, and following a hearing, the court ruled from the bench that the evidence would not be suppressed because voluntary consent to the search had been obtained. The court now writes briefly to supplement that ruling.

*Findings of Fact*

1. The Philadelphia police conducted an investigation into alleged drug trafficking activity involving marijuana and cocaine at 4605 N. 6th Street in Philadelphia, Pennsylvania. The investigation began in February, 1999, as a result of information received from a confidential source. Surveillance of the location, including photographing and videotaping, was undertaken during the course of the investigation.

2. On April 27, 1999, Drug Enforcement Task Force Officer Jesus Serrano received information that approximately two kilograms of cocaine would be brought to 4605 N. 6th Street some time that day.

3. That same day, at approximately 7:00 p.m., ten to twelve officers from the Philadelphia Police Narcotics East Division and the Drug Enforcement Task Force entered 4605 N. 6th Street through a front door which was propped open. The officers were in street clothing, but wore either black vests with the word "police" in white letters on the front and back of the vest or blue jackets with "police" in yellow letters on the front and back of the jacket.

4. Commercial activity was conducted at 4605 N. 6th Street. During most of the time the location was under surveillance, there was a sign on the front of the building which read "House of Spice." However, the sign was not in place on April 27, 1999.

5. The officers entered into a large "social room" which contained a pool table, two pinball machines and a television. During the course of securing the location, one of the officers drew his weapon when entering a dark area.

6. A male who identified himself as George McClain came out of a middle room which was adjacent to the social room. Mr. McClain told the officers that he was the owner of Ace Custom Signs which was located on the premises.

7. Philadelphia police sergeant Edward Miller and two other officers walked with Mr. McClain into the middle room. Sergeant Miller told Mr. McClain that the officers were investigating complaints regarding a foul odor and illegal drug activity at 4605 N. 6th Street.

8. There was some discussion regarding the name of the business since the officers believed that it was still known as House of Spice. Mr. McClain stated that his business was recently incorporated and offered to get the papers from his attorney. Sergeant Miller told him that it was not necessary to contact his attorney.

9. Mr. McClain asserted that there was nothing illegal on the premises and offered to let the police look around.

10. Sergeant Miller presented Mr. McClain with a written consent to search form. *See* Gov't Ex. A. The form stated that the officers did not have a search warrant and that there was a constitutional right to refuse consent. Sergeant Miller read the form to Mr. McClain and

observed Mr. McClain read it to himself. Mr. McClain was also told that he had the right to stop the search at any time. He signed the consent form at approximately 7:15 p.m.

11. During the time that Mr. McClain discussed consenting to a search of the premises, there were only three police officers in the middle room with him. The defendant and another male were also in the middle room.

12. As the search commenced, Mr. McClain unlocked a back room for the officers. In this room, the police found a scale and, in a small metal cabinet, a silver bowl containing white powder residue which they believed to contain cocaine.

13. Upon being shown the suspected cocaine, Mr. McClain summoned Mr. Hernandez and asked him whether he had anything else on the premises. Mr. Hernandez indicated that he was the owner of the suspected cocaine. He also pulled out a large grey container filled with a weedy substance which appeared to be marijuana.

14. The police gave Mr. Hernandez *Miranda* warnings and placed him under arrest. During their search of his person, the police recovered a 9 mm Ruger handgun, approximately $597 in currency in small denominations, a packet of a substance they believed to be marijuana and several packets containing a substance they believed to be cocaine.

15. Mr. McClain opened a safe in the middle room for the police. Inside the safe, the police recovered another 9 mm Ruger handgun and a plastic bag containing an off-white powder believed to be cocaine.

16. Also in the middle room, the police found five plastic bags containing a substance they believed to be marijuana and approximately $344 in small denominations.

17. At approximately 10:45 p.m., a search warrant for 4605 N. 6th Street was obtained and executed by the Philadelphia police. Although the police searched the premises again pursuant to the warrant, they did not uncover any additional drugs or weapons. The police assert that the drugs and weapons, with the exception of those found on Mr. Hernandez, were left where they were found and not formally "seized" until after this warrant was executed. The practice of obtaining a search warrant if any illegal contraband is discovered during a consensual search is said to be a policy of the Philadelphia police department.

18. Mr. Hernandez is the treasurer of Ace Custom Signs.

*Conclusions of Law*

19. As a preliminary matter, the officers' entry into the "social room" of 4605 N. 6th Street was lawful. The protections of the Fourth Amendment are implicated when a defendant has an expectation of privacy in the place searched and that expectation is reasonable. *See Rakas v. Illinois,* 439 U.S. 128, 143–44, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A person may assert a privacy interest in commercial property, but the expectation of privacy is different from and less than the privacy interest in one's residence. *See Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998) (citing *New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987)).

20. The House of Spice sign, which was displayed during most of the time the location was under surveillance, the layout of the social room, with its pool table and pinball machines, and the fact that the front door was propped open, indicate that 4605 N. 6th Street was a business which was readily accessible to the general public. No evidence has been presented to the contrary. The officers did not begin actively exploring the premises for contraband until they had obtained the consent of the owner of the business. Thus, the officers' entry into 4605 N. 6th Street did not violate a reasonable expectation of privacy. *Cf. United States v. Acosta,* 965 F.2d 1248, 1252 (3d Cir.1992)

(finding no expectation of privacy in hallway of apartment building where the door to the building was unlocked, rendering hallway accessible to "tenants, visitors, solicitors, workmen and other members of the public").

■ 21. The search of 4605 N. 6th Street was lawful because of Mr. McClain's voluntary consent. If voluntary consent is given, a warrant is not required under the Fourth Amendment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government must prove the voluntariness of the consent by a preponderance of the evidence. *See United States v. Sebetich*, 776 F.2d 412, 424 (3d Cir.1985).

22. Whether consent is voluntary is a fact-based inquiry which must consider the "totality of the circumstances." *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041. Consent is involuntary if the person's will has been overborne by police actions. *See id.* at 226. Factors to be considered include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location and time of the encounter)." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir.1996). Also relevant is whether the person knows of his or her right to refuse consent, although lack of this knowledge does not necessarily render consent involuntary. *See Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. 2041.

23. Mr. McClain spoke only briefly with the officers before he offered to allow the police to search the premises. He readily signed a consent form when one was presented. The form is written in simple, straightforward language and clearly states that the police do not have a warrant and that there is a constitutional right to refuse permission to search. *See* Gov't Ex. A. While ten to twelve officers entered the building, only three officers were in the middle room with Mr. McClain

when his consent was sought. No evidence was presented that the officers' manner was aggressive or coercive. *See United States v. Talkington*, 843 F.2d 1041, 1049 (7th Cir.1988) (noting that standing alone, the presence of several officers at the time consent is requested is not *per se* coercive); *cf. United States v. Jones*, 641 F.2d 425, 429 (6th Cir.1981) (finding consent involuntary where five officers, two armed with shotguns and the others holding drawn pistols, banged and kicked "very hard" at the door); *Harless v. Turner*, 456 F.2d 1337, 1338 (10th Cir. 1972) (finding consent involuntary where four or five agents "routed the defendant and his wife out of bed" at 1:45 in the morning). While one of the officers drew his weapon in the course of securing the location, no weapon was drawn near Mr. McClain.

■ 24. Moreover, Mr. McClain was not in a particularly vulnerable subjective state. He was informed of his right to refuse the officers' request to search. The commercial character of the property, the fact that the demand was made during business hours at Mr. McClain's place of business, and his relatively prompt acquiescence all suggest that his will was not overborne. Although informed of right to revoke his consent, Mr. McClain did not do so but rather assisted the police by unlocking the back room and opening the safe. In light of the totality of the circumstances, Mr. McClain's consent was voluntary.

25. Mr. Hernandez has argued that the police misrepresented the nature and purpose of their search and therefore, Mr. McClain's consent cannot be voluntary. According to Mr. Hernandez, the officers indicated that they were from Licensing and Inspection and that they wanted to search the premises in response to a complaint regarding a foul odor. The evidence does not support this theory. While not in uniform, the officers wore clothing that identified them as police. Additionally, the consent form signed by Mr. McClain clear-

ly indicates that consent was sought by the Philadelphia Police Department to search the entire premises for any illegal contraband. *See* Gov't Ex. A. The court finds that Mr. McClain was not deceived by the officers.

*Conclusion*

The government met its burden of proving that the search of 4605 N. 6th Street did not violation the Fourth Amendment because it was undertaken pursuant to voluntary consent. The court denies the defendant's motion to suppress the evidence seized during the course of that search.[1]

### MEMORANDUM AND ORDER

**AND NOW**, this 22nd day of November, 1999, upon consideration of defendant's motion to suppress statements and all physical evidence, the response thereto, and after a hearing, it is hereby **ORDERED** that defendant's motion is **DENIED**.

---

**1.** It is odd that the Philadelphia police did not obtain a warrant prior to their search even though it appears that they had probable cause to do so. Even more odd is the fact that the police obtained a warrant after the search but before the formal seizure of the drugs and weapons the search had uncovered. The Fourth Amendment protects against unreasonable searches *and* seizures, notwithstanding the premise underlying the Philadelphia police practice. What, one wonders, would the police have done if Mr. McClain refused consent? There is a high risk that the police officers' error would have resulted in suppression of the evidence. While the police were saved from a blunder by the voluntary consent in this case, their policy of obtaining a warrant after a search is in need of serious re-examination.