LAWSON, District Judge,
concurring in part and dissenting in part.
I concur in the opinion of the court affirming the dismissal of plaintiffs’ state law claims. However, because I believe that the record presents a genuine issue of material fact on whether a reasonable officer would have concluded that a warrant-less home entry was lawful under the circumstances Nicole Williams confronted, I dissent from section 111(A) of the court’s opinion affirming the dismissal of the section 1983 claim based on qualified immunity.
I.
This court has held that the qualified immunity question requires an analysis that proceeds through three steps that are fact-intensive, since the inquiry calls for an assessment of the officer’s conduct “in the situation he confronted.” Sample v. Bailey, 409 F.3d 689, 698 (6th Cir.2005) (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Therefore, I will take a moment to review the facts summarized above by my colleague.
On April 10, 1998, Ms. Jordan lived in a home located at 2472 Lawrence Avenue in Toledo, Ohio with her sixteen-year-old granddaughter, appellant Angel Williams, and several other minor children. At the time, Jordan was acting as the legal guardian for the minor children and her granddaughter. Jordan was born on May 11, 1926, was widowed in 1990, is the mother of 16 children, and has lived at the Lawrence Avenue residence for over 30 years.
At approximately eight o’clock in the morning on April 10, 1998, Jordan responded to a knock on the door by defendant Officer Richard Murphy of the Toledo Police Department. Murphy was investigating a complaint that the residence was unsafe and unsanitary. He spoke with Jordan on the front porch of the house for approximately ten minutes while Angel stood in the doorway. Murphy did not enter the house and left after concluding his conversation with Jordan. Although it is not entirely clear from the record what the two individuals discussed, Jordan did testify at her deposition that Murphy was carrying some “blue papers” and that he informed Jordan before he left that he was going to get more help and would be back.
At approximately twelve-thirty that afternoon, the Lucas County Children Services Board received a report of possible neglected children at Jordan’s residence. The report stated that Jordan’s house was in a deplorable condition, Jordan was caring for twenty-five children, and several children were seen looking out the windows of the house. Nicole Williams, one of the defendants in this case, was the social worker in the Assessment Department of the Children Services Board assigned to investigate the report. Williams went to Jordan’s residence where she met six Toledo Police Officers, including Murphy. Murphy informed Williams that he had been at Jordan’s house earlier in the day to investigate complaints that Jordan’s house was in an unsafe and filthy condition. Murphy also told Williams that he *522 had observed several children in the house, and that the house was full of trash.
Nicole Williams stated in her affidavit that it was the consensus of the personnel at the scene that the children in Jordan’s house were in immediate danger because of the deplorable conditions and that the removal of the children was necessary to prevent immediate physical harm. The police officers allege that they first knocked on the front door, but after receiving no answer they entered through an open side door. Williams followed the officers into the house through the side door. Jordan and her granddaughter Angel, however, deny that the officers or Williams knocked on the door before entering. Williams states in her affidavit that upon entering the house, she observed trash and filth and smelled a very bad odor. It is undisputed that a warrant was not obtained to authorize the entry of Jordan’s home or the seizure of the children.
Once inside the house, the officers announced their presence and called for Jordan and Angel until they came downstairs. The officers informed the women that they had come to check on the condition of the children in the house. Williams observed two young children downstairs. The police officers went upstairs and found two naked children in the upstairs bedrooms. According to Williams, the children and their clothing were dirty. Williams explained to Jordan that her house was unsafe and that the children should not be there. The police officers dressed the children and took them into the custody of the Children Services Board. Williams stated in her affidavit that Jordan refused to answer her questions relating to the identity of the children and attempted to stop the police from taking the children into custody. The officers arrested both Jordan and Angel. Williams claims that the entire time she was in the house she stayed on the first floor by the entry door. The Lucas County Juvenile Court eventually placed the children in the custody of other relatives.
Jordan alleges that one of the officers knocked her into a railing causing injury to her knee as the officer was climbing the stairs in her house. She also alleges that another officer pushed her into a wall or a door and injured her back. She also contends that Williams’ warrantless entry into her home violated her rights under the Fourth Amendment. Williams pleaded qualified immunity as a defense, which the district court sustained on summary judgment.
II.
Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does “not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of this defense is to strike a balance that “accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office.” Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900 (6th Cir.2004) (internal quotes and citation omitted).
The Supreme Court has held that a claim of qualified immunity must be examined in two stages, see Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001): first, it must determine whether the facts alleged, viewed in the light *523 most favorable to the party asserting the injury, show that the officer’s conduct violated a constitutional right. Id. at 201 (noting that where the facts are in dispute, the proper inquiry is whether “a violation could be made out on a favorable view of the parties’ submissions”); second, if a constitutional violation is found, the court proceeds to determine whether the party’s right to be free from the violation was “clearly established” at the time of the violation such that a reasonable public official would understand it as such. Ibid. This court has expanded that inquiry into a three-step sequential analysis, at least when the qualified immunity defense is raised in a summary judgment motion brought after discovery has been conducted, as here. See Sample, 409 F.3d at 696 &n. 3.
First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence ‘to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.’
Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003) (quoting Williams v. Mehra, 186 F.3d 685, 691 (6th Cir.1999) (en banc)); see also Tucker v. City of Richmond, Ky., 388 F.3d 216, 220 (6th Cir.2004); Champion, 380 F.3d at 901.
The district court concluded that the plaintiffs “failed to establish the violation of a clearly established right.” J.A. at 83. It is not apparent from this holding, however, whether the court concluded that no constitutional right was violated, or that the right, although violated, was not clearly established. The plaintiffs argue that Williams violated the Fourth Amendment in two respects: she participated in a warrantless entry that was unreasonable, and she acted in concert with the police who violated the “knock and announce” rule. The majority assumed without deciding that a constitutional right was violated. However, to properly analyze the defense of qualified immunity, the “contours” of that right must be examined.
A.
The Fourth Amendment states that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court reasserted that the “physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.” Id. at 585. That is “[bjecause ‘the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion’ stands ‘[a]t the very core of the Fourth Amendment.’ ” Groh v. Ramirez, 540 U.S. 551, 558, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). Accordingly, to “minimize[ ] the danger of needless intrusions” into the “sanctity of the home,” Payton, 445 U.S. at 586, 601, the Fourth Amendment requires a warrant issued by a judicial officer — a “neutral and detached magistrate.” Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The Supreme Court has consistently held that only “reasonable” searches are allowed by the Fourth Amendment, and that searches without a warrant are “per se unreasonable” except in a few well-defined and carefully circum *524 scribed instances. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In the case of a person’s home, warrantless entries and searches are “presumptively unreasonable.” Payton, 445 U.S. at 586.
Williams and the police officers were operating under the authority of section 2151.31 of the Ohio Revised Code when they entered Jordan’s home. That statute states:
(A) A child may be taken into custody in any of the following ways:
(1) Pursuant to an order of the court
(2) Pursuant to the laws of arrest;
(3) By a law enforcement officer or duly authorized officer of the court when any of the following conditions are present:
(a) There are reasonable grounds to believe that the child is suffering from illness or injury and is not receiving proper care ... and the child’s removal is necessary to prevent immediate or threatened physical or emotional harm;
(b) There are reasonable grounds to believe that the child is in immediate danger from the child’s surroundings and that the child’s removal is necessary to prevent immediate or threatened physical or emotional harm;
(c) There are reasonable grounds to believe that a parent, guardian, custodian, or other household member of the child’s household has abused or neglected another child in the household and to believe that the child is in danger of immediate or threatened physical or emotional harm from that person.
(6) By a law enforcement officer or duly authorized officer of the court when any of the following apply:
(a) There are reasonable grounds to believe that the conduct, conditions, or surroundings of the child are endangering the health, welfare, or safety of the child.
Ohio Rev.Code § 2151.31(A). However, social workers also must abide by the strictures of the Fourth Amendment when removing a child from a home. See Cherrington v. Skeeter, 344 F.3d 631, 638 (6th Cir.2003) (holding that removal of children from custody of legal guardian should be analyzed under the Fourth Amendment reasonableness standard); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir.2003) (holding that a warrantless no-knock entry by social workers violated the Fourth Amendment absent exigency of imminent danger to child’s welfare); Brokaw v. Mercer County, 235 F.3d 1000, 1010 (7th Cir.2000) (holding that a child taken out of a home by a government official was seized within the meaning of the Fourth Amendment); Tenenbaum v. Williams, 193 F.3d 581, 601-06 (2d Cir.1999) (analyzing seizure of a child by the State during an abuse investigation under the Fourth Amendment); Calabretta v. Floyd, 189 F.3d 808, 816 (9th Cir.1999) (stating that a social worker must have a warrant to enter a home to remove a child absent consent or exigency); Lenz v. Winburn, 51 F.3d 1540, 1547 (11th Cir.1995) (stating that even though social worker’s intrusion was motivated by concern for child’s welfare, “and not as part of any investigation, the search falls within the ambit of the Fourth Amendment”).
As mentioned previously, it is undisputed that neither Williams nor the police officers had obtained a warrant authorizing the entry into Jordan’s home. They justified the entry on the basis of their *525 belief that the home was unfit for children. However, the Supreme Court has consistently held that absent a warrant, probable cause alone will not suffice to sanction an entry into a dwelling. Kirk v. Louisiana, 536 U.S. 635, 636-37, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (per curiam). Probable cause must be accompanied by exigent circumstances or some other exception to the warrant requirement in order to make the entry constitutional. Id. at 637; United States v. Lewis, 231 F.3d 238, 241 (6th Cir.2000).
Exigent circumstances — i.e., the existence of an emergency situation demanding immediate action, United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990)— may excuse the failure to procure a warrant to enter a home. Some of the exceptions to the warrant requirement recognized by the Supreme Court include home entries and searches pursuant to consent, searches incident to a lawful arrest, seizures of objects in plain view, searches and seizures in pursuit of a fleeing felon, and seizures to prevent the loss or destruction of evidence. Id. at 360 n. 3.
Another recognized exception to the warrant requirement centers around exigent circumstances in which the safety of the police or others within a home is in peril. See United States v. Johnson, 22 F.3d 674, 680 (6th Cir.1994). For instance, in Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court endorsed the lower court’s analysis of whether exigent circumstances existed in that case to justify the warrant-less entry into a home that was surrounded by police in order to arrest a murder suspect who appeared to be preparing to flee. The Court agreed that the “risk of danger to the police or to other persons inside or outside the dwelling” could constitute an exigent circumstance, but found that the exigency did not exist in that case. Id. at 100. In Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the Supreme Court rejected a general “murder scene” exception to the warrant requirement. However, the Court also stated that the police have a “right” to respond to “emergency situations,” and that the “Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.” Id. at 392.
Nicole Williams contends that since it was undisputed that she believed the children in Jordan’s home were in immediate danger, exigent circumstances existed and legitimatized her entry into the residence without a warrant. Williams subjective belief, however, is irrelevant because the assessment of the exigency must be based on the belief of a reasonable officer under the circumstances, which is an objective standard. See Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that the police officers subjective beliefs about the search in question were irrelevant).
The record reflects that Williams first learned of this case of possible child neglect from an anonymous report stating that Jordan’s house was in deplorable condition and that she was caring for twenty-five children. Williams went to Jordan’s residence to investigate the complaint as a “duly authorized officer of the court” in accordance with Ohio law. See Ohio Rev. Code. § 2141.421(F)(1). There she met police officers, including Officer Murphy who had been at the residence an hour earlier. Murphy told Williams that he observed the house to be filthy and full of trash.
Williams asserts that it was the consensus of the personnel present that the children in the house were in immediate danger because of the deplorable condition of *526 the house and that removal of the children was necessary to prevent immediate physical harm. However, the only evidence of danger that Williams has produced, other than her conclusory assertions, is a report that the house was in deplorable condition and Murphy’s statement that the house was filthy and full of trash. Williams does not explain how the presence of trash and filth caused a danger to the children that was so immediate that a warrant could not be sought from a neutral judicial officer. Officer Murphy had virtually the same information an hour earlier yet did not seek judicial authorization to remove the children despite ample time in which to obtain a warrant.
For their part, the plaintiffs averred that the house was in habitable condition, the lights and electrical outlets were in good working order, all of the appliances and toilets worked properly, there was heat, hot water and smoke detectors, and no dangers existed. Based on facts taken in the light most favorable to the plaintiffs, I would conclude that the plaintiffs proved, sufficiently to survive summary judgment, that their constitutional right to be free of a warrantless home intrusion was violated because no valid excuse for failing to seek a warrant was established.
B.
The majority concluded that Nicole Williams should avoid liability for violating the plaintiffs’ constitutional rights because it was reasonable, in its view, for Williams to defer to the decision of the police officers and follow them into the house without a warrant. It suggests that case workers have less experience than police officers when dealing with the requirements of the Fourth Amendment, so that the illegality of following the lead of the police and entering the plaintiffs’ home, even when there was ample time to obtain a warrant, was beyond Williams’ understanding.
However, I gather from the submission of the parties that it is not unusual for social workers in the employ of the Lucas County Children Services Board to confront situations in the field that require the removal of children from their homes. Although they must cooperate with the police, as the majority notes, case workers who are called upon to enter the private dwellings of citizens in their region must bear some measure of personal responsibility for knowing when prior judicial approval is required to sanction their actions, and when an emergency will excuse an immediate, warrantless response. The law of qualified immunity draws that line by holding state actors (including case workers) responsible for violating constitutional rights that are “clearly established.”
“For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.” Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal quotes and citations omitted). “[A] right can be clearly established even if there is no case involving ‘fundamentally similar’ or ‘materially similar’ facts if the premise of a prior case alerts officials to the ‘clear applicability’ of the legal principle to ‘a subsequent set of facts.’ ” Scicluna v. Wells, 345 F.3d 441, 446 (6th Cir.2003) (quoting Feathers v. Aey, 319 F.3d 843, 850 (6th Cir.2003)).
Fourth Amendment jurisprudence firmly establishes the constitutional protections that honor the sanctity of the home. Ni *527 cole Williams, as a public official, had fair notice that her entry would be unlawful in the absence of a warrant or exigent circumstances. This court has held that the public official must establish an exception to the warrant requirement by “clear and positive proof.” United States v. Jones, 641 F.2d 425, 429 (6th Cir.1981) (consent search). To satisfy her “heavy burden” to establish exigent circumstances, the official must do more than demonstrate “the mere possibility” that an exigency exists. Radka, 904 F.2d at 362; see also Jones, 641 F.2d at 428-429. The test is an objective one: the public official must be able to point to “specific and articulable facts” at “the moment of the warrantless entry” that would lead a reasonable, experienced officer to believe that someone inside the dwelling required immediate assistance. United States v. Morgan, 743 F.2d 1158, 1162, 1163 (6th Cir.1984).
Viewing the evidence in the light most favorable to the plaintiff, I do not believe that there was sufficient proof of exigency — that is, an emergency resulting from the conduct, conditions, or surroundings of the children that would endanger their health, welfare, or safety before a warrant could be sought — to permit summary dismissal of the federal claim against Nicole Williams. Williams reasonably may have perceived that the condition of Jordan’s home ultimately would justify a finding under Ohio law that supported the removal of the children. But entry of a private dwelling, especially to remove the occupant’s children, plainly has been recognized as a serious intrusion that must be authorized by a neutral and detached judicial officer unless an emergency clearly exists. There is a factual dispute over the question of the existence of exigent circumstances. Summary judgment for Nicole Williams on the basis of qualified immunity was not appropriate. See Flagner v. Wilkinson, 241 F.3d 475, 481 (6th Cir.), cert. denied 534 U.S. 1071, 122 S.Ct. 678, 151 L.Ed.2d 590 (2001) (stating that “[sjummary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights”).
Similarly, Jordan and Angel Williams testified at deposition and filed affidavits asserting that the officers did not knock on the door or identify themselves before entering Jordan’s home. Nicole Williams insists that the officers knocked on the front door before entering through an open side door. Jordan stated that earlier in the day, Officer Murphy knocked on the door and she answered it. The facts are in dispute as to whether the officers and Williams knocked and announced their presence before entering the premises.
The knock-and-announce rule is a clearly established feature of Fourth Amendment jurisprudence and is one measure of the reasonableness of searches and seizures. United States v. Banks, 540 U.S. 31, 36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). The Supreme Court has stated that requirement is not absolute, but rather “the common law knock-and-announce principle is one focus of the reasonableness enquiry[ ] and ... although the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.” Ibid, (citations and footnote omitted).
Exigent circumstances may justify a departure from the knock-and-announce requirement. Dickerson v. McClellan, 101 *528 F.3d 1151, 1158 (6th Cir.1996) (stating that “it is clearly established law that the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances”). “This Court has determined that exigent circumstances relieve officers of the knock-and-announce requirement ... when ... the officers have a justified belief that someone within is in imminent peril of bodily harm.” United States v. Dice, 200 F.3d 978, 983 (6th Cir.2000) (citing United States v. Finch, 998 F.2d 349, 353 (6th Cir.1993)). As with a warrantless entry, the burden of proof is on the public official to show exigent circumstances. Ibid.
The same facts that excuse the requirement to obtain a warrant to enter a house may also support the suspension of the knock-and-announce rule. However, as previously noted, in this case those facts are in dispute. That fact dispute should preclude a finding that the defendant was entitled to qualified immunity from liability for this alleged constitutional violation.
III.
Because I believe that when the facts are viewed in the light most favorable to the plaintiffs a constitutional violation has been shown to have occurred, the constitutional right was clearly established and one of which a reasonable person would have known, and the plaintiffs have offered sufficient evidence to indicate that what Ms. Williams allegedly did was objectively unreasonable in light of the clearly established constitutional rights, I must respectfully dissent from that portion of the majority’s opinion that affirms the dismissal of the plaintiffs’ section 1983 claim.