**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Charles Scott WORLEY,**
**Defendant–Appellee.**

**No. 97–6374.**

United States Court of Appeals,
Sixth Circuit.

Argued: Feb. 4, 1999

Decided and Filed: Sept. 29, 1999

Thomas A. Colthurst (argued and briefed), Office of the U.S. Attorney, Memphis, Tennessee, for Appellant.

April R. Ferguson (argued and briefed), Office of the Federal Public Defender for the Western District of Tennessee, Memphis, Tennessee, for Appellee.

Before: JONES, NELSON, and BOGGS, Circuit Judges.

JONES, J., delivered the opinion of the court, in which BOGGS, J., joined. NELSON, J. (pp. 387–89), delivered a separate dissenting opinion.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellee Charles Worley was indicted by a federal grand jury on February 12, 1997 for possession with intent to distribute approximately 770 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Worley filed a motion to suppress, asserting that evidence was obtained as the result of an unlawful search and seizure. The district court granted Worley's motion, and pursuant to 18 U.S.C. § 3731,[1] the government appealed. The government now contends that the district court erred in granting Worley's motion because the evidence was obtained pursuant to Worley's valid and voluntary consent to the search. Conversely, Worley contends that his motion was properly granted because he did not voluntarily consent to the search of his personal effects. For the reasons stated herein, we find no error in the district court's decision. We therefore AFFIRM and REMAND for further proceedings.

---

1. Section 3731 provides that:
   An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence ... not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
   18 U.S.C. § 3731.

## I.

### A.

On the evening of February 4, 1997, Paul Harvey, a Drug Enforcement Agency Task Force Officer, and Christina Clinton, an Airport Police Officer, were on patrol at the Memphis International Airport. Harvey had worked with the Shelby County, Tennessee Sheriff's Department for approximately ten years, served as a detective for five years and, at the time, was assigned to the Drug Interdiction Unit. Clinton had served as an airport patrol officer for two years, and as a patrol officer with another police force for two years prior to her service at the airport. That evening, both officers were armed with concealed pistols and dressed in plain clothes.

Harvey and Clinton first noticed Worley near the airport coffee and gift shops. Harvey was attracted by Worley's appearance: Worley was wearing blue jeans, a striped cotton shirt, a flannel jacket and a large cowboy hat, and had a distinctive mustache and a "weather beaten" face. J.A. at 159. In addition, Harvey believed that he had seen Worley in the airport on previous occasions. About an hour later, Harvey again spotted Worley. At that time, Worley was carrying a clear plastic bag containing personal items and a beige Marriott bag. Harvey also noticed that the Marriott bag appeared to contain something heavy, shifted to one corner of the bag. Harvey found Worley's use of these types of bags "out of the ordinary" because in Harvey's opinion, airport travelers usually carried their personal items in luggage, not plastic bags.[2] Harvey then informed Clinton of his suspicions and told her to follow him. .

Harvey and Clinton followed Worley to the airport lockers, and approached him as he was placing the bags in his locker. The officers identified themselves as police officers and asked if they could speak with him for a moment.[3] Worley agreed, and produced a valid California driver's license in response to Harvey's request for identification. Harvey returned the driver's license, and then asked for Worley's boarding pass. In response, Worley handed Harvey his ticket and boarding pass. Harvey looked at the ticket and the amount, and noticed that the ticket had been paid for in cash. Harvey also noticed that there were no baggage claim checks attached to the ticket. Harvey then asked Worley about the ticket, specifically whether he had purchased the ticket. Worley responded that a friend had purchased the ticket, that it was a round-trip ticket and that the date was stamped on the ticket. Despite Worley's assertion to the contrary, after reviewing the ticket, and based on the low fare ($310 with a destination of Columbus, Ohio), Harvey insisted that the ticket was a one-way ticket. Harvey then returned the ticket.

Harvey next asked Worley about the Marriott bag, which Worley had already placed in the locker. Specifically, Harvey asked Worley whether the bag belonged to him and inquired as to the contents of the bag. Worley responded that the bag con-

---

2. Worley testified that when traveling by airplane, he kept such personal items as his wallet, keys, belt and change in a clear plastic bag so that he would not have to individually remove all of these items before going through the metal detector, but instead, could simply place the bag on the X-ray conveyor belt.

3. There is some disagreement as to how the officers identified themselves. Clinton testified that she and Harvey showed Worley their badges. However, Harvey testified that he showed Worley his "credentials," but did not specifically show Worley a badge. The district court examined the actual badges and "credentials." The district court judge specifically found that even though the officers may not have intended to show Worley the badges, it "obviously ... looked like there was a badge there, even though it was covered up," and that he could see the silver color of the badge. J.A. at 307–08. Thus, the district court made the specific factual finding that Worley had seen the badge at the time he made this response.

tained a pair of drumsticks and a T-shirt that he had just purchased from the gift shop. Harvey then asked whether he could look in the bag. At that time, Worley paused and then stated: "[Y]ou've got the badge, I guess you can." J.A. at 272, 293. Harvey opened the locker and retrieved the bag. Upon searching the bag, Harvey found five "baggies" containing an off-white chunky substance emitting a sour odor. Based on his experience, Harvey concluded that the appearance and smell of the substance were consistent with methamphetamine. Harvey then arrested Worley, read him his *Miranda* rights, and took him to the DEA office. On the way to the office, Worley stated that he was transporting the drugs because his girlfriend in California was pregnant and he needed the money. A later field test indicated that the substance was, in fact, methamphetamine, approximately 734 grams worth.[4]

### B.

On February 12, 1997, Worley was indicted by a federal grand jury and charged with possession with the intent to distribute 770 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Worley thereafter filed a motion to suppress the evidence, which was referred to a magistrate judge for a report and recommendation. The magistrate judge held an evidentiary hearing on April 11, 1997, at which Harvey, Clinton and Worley testified. Worley testified that when Harvey requested to search the bag, "[he] didn't

feel like [he] could do much of anything" and "[he] couldn't just walk away." J.A. at 229. Worley also stated at the hearing that he believed that he could not just "blow a police officer off" and that he could not say "no" to a police officer when that officer wanted something from him. J.A. at 229–30.

The magistrate judge thereafter issued her report and recommendation, which was filed on June 9, 1997. She concluded, among other things, that Worley voluntarily consented to the search of the Marriott bag. Accordingly, she recommended that Worley's motion to suppress be denied. On June 24, 1997, the district court issued an order adopting the magistrate's report and recommendation, and on that same date, Worley filed objections to the magistrate judge's report and recommendation. The district court thereafter scheduled a status conference, held an evidentiary hearing and requested additional briefs. Although both Harvey and Clinton testified at this hearing, Worley did not.[5] On August 29, 1997, after a *de novo* review of the magistrate judge's report and recommendation, the district court granted Worley's motion to suppress.[6] Although the district court judge did not prepare a written order, he issued his ruling from the bench and offered to provide the decision in writing if the parties requested. On the record, the district court judge explained at length his reasons for granting Worley's motion to suppress:

**4.** The officers also retrieved approximately 37 grams of methamphetamine from Worley's person.

**5.** At oral argument, defense counsel explained that she did not call Worley to testify because she believed that it was more important for the district court to have the opportunity to observe the officers' conduct and demeanor.

**6.** Twenty-eight U.S.C. § 636(b)(1) provides, in pertinent part:

> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and

recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1). Thus, the district court's "de novo review of [the] magistrate's report [was] both statutorily and constitutionally required." *United States v. Shami*, 754 F.2d 670, 672 (6th Cir.1985).

In this case, the defendant has argued that in permitting the search, he merely acquiesced to the officer's authority rather than giving his unequivocal voluntary consent to search. It's the determination of the Court after a very, very careful review of the entire record and much submittal by all of you ... that the position of the defendant is supported by the record. In this case the statement that was given by the defendant ["You've got the badge, I guess you can"], which is agreed upon by really everyone ... does not show by a preponderance of the evidence through clear and convincing testimony that valid consent was obtained.... This was a circumstance where when you look at the burden, and I kept coming back to that, when you look at the burden in the case and the fact that it is the government's burden to show by a preponderance of the evidence that ... valid consent was obtained, that that is just not satisfied here.... In this case, you really didn't have much conduct to look at for context, and the conduct that you did have to look at for context put us in sort of an odd situation with the review of the ticket ... Mr. Worley's response in this case, which is not really debated, was not an unequivocal expression of free and voluntary consent. In fact, it was ... somewhat of the opposite, it was an expression of futility in resistance to authority....

J.A. at 332–34. The government thereafter filed this timely appeal.

## II.

◼ On appeal, we are faced with an issue which we have considered on numerous occasions-whether the district court's determination as to whether a defendant validly and voluntarily consented to a search is clearly erroneous. We note at the outset that the determination of "whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Accordingly, "the district court's decision regarding consent will not be overturned unless it is clearly erroneous." *United States v. Bueno*, 21 F.3d 120, 126 (6th Cir.1994); *see also United States v. Ivy*, 165 F.3d 397, 401 (6th Cir.1998)("whether consent to a search was in fact voluntary-[is an] issu[e] of fact, which will be overruled only if the district court's findings were clearly erroneous")(citing *United States v. Rose*, 889 F.2d 1490, 1494 (6th Cir.1989)); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998)(en banc)("[w]hether consent to a search is voluntarily given is a question of fact," and thus, the district court's determination "will be reversed only if clearly erroneous"). This court will find the district court's decision to be clearly erroneous when, although there is evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted). Further, "[w]here there are two permissible views of the evidence" the district court's conclusions "cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. 1504.

◼ Although the government recognizes that the "clearly erroneous" standard is the standard of review we have so often applied in such cases, the government nonetheless contends that it is not always used, and that because the "government contests the district court's application of the pertinent legal principles to the undisputed facts ... the district court's decision should be subject to de novo review." *See* Government's Br. at 9. The government's reliance on *United States v. Guimond*, 116 F.3d 166, 169 (6th Cir.1997), in support of this proposition is misplaced. The government garners no support from *Guimond* on this issue because the "legal conclusion" at issue in *Guimond* was the district

court's conclusion "that [the defendant's] consent to search was invalid because it was obtained while [the defendant] was being illegally detained." *Id.* at 170. Conversely, in the case *sub judice*, the district court based its decision on an examination of the specific facts and circumstances surrounding Worley's case. Indeed, in *Guimond*, we reemphasized that "[t]he Fourth Amendment test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined by all the circumstances." *Id.* (quoting *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 421, 136 L.Ed.2d 347(1996)(quoting *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. 2041)). The government has presented no plausible reason as to why the "clearly erroneous" standard of review set forth in Supreme Court and circuit court precedent is inapplicable, and thus, we reject any requests by the government to reject this long-held and well-established standard of review.[7]

### III.

### A.

The government's primary argument on appeal is that Worley consented to the search of the Marriott bag, and thus, the district court erred in granting Worley's motion to suppress.[8] Conversely, Worley responds that he did not consent to the search, but as the district court concluded, he believed that resistance to the police officers' authority was futile, and thus, he simply acquiesced to the officers' authority. We note at the outset that "[i]t is the [g]overnment's burden, by a preponderance of the evidence, to show through 'clear and positive testimony' " that Worley's valid and voluntary consent to the search was obtained. *United States v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir. 1996); *see also Bueno*, 21 F.3d at 126 (citing *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)); *United States v. Jones*, 641 F.2d 425, 429 (6th Cir.1981); *United States v. Scott*, 578 F.2d 1186, 1188–89 (6th Cir.1978)(government bears burden of proving, "by clear and positive testimony," that consent was voluntary, unequivocal, specific and intelligent).

### B.

Although the Supreme Court has consistently emphasized the significance of the Fourth Amendment's protections, these protections are not unlimited, and the Court has made clear that in certain instances, the Fourth Amendment is not violated even though the warrant and probable cause requirements are not satisfied.[9] *See United States v. Watson*, 423 U.S. 411, 427, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)("There is no more basic constitutional rule in the Fourth Amendment area

---

7. We find the government's argument on this point disingenuous. Far more frequently, this court is reviewing the district court's decision to deny the defendant's motion to suppress and the defendant's appeal therefrom. In those cases, the government invariably advances what has clearly been the correct standard of review for determining the voluntariness of consent to a search-the "clearly erroneous" standard of review. Despite the government's suggestion to the contrary, the procedural posture of the parties to this case does not affect the proper standard of review.

8. The government also argues that a reasonable police officer would have believed that Worley's statement "You've got the badge, I guess you can" indicated that he consented to

the search. Worley, however, argues that a reasonable police officer would know that his statement was not a valid, unequivocal statement of consent. Based on the facts of this case, we believe that the district court did not err to the extent that it concluded that a reasonable police officer would not have believed that Worley's response indicated that he clearly and unequivocally consented to the search.

9. We note that the only issue before us is whether Worley consented to the search. Thus, other commonly raised Fourth Amendment issues, e.g., whether a "seizure" occurred, or whether the officers had either "probable cause" or a "reasonably articulable suspicion" to stop and question Worley, are not at issue.

than that which makes a warrantless search unreasonable except in a few 'jealously and carefully drawn' exceptional circumstances.") (citation omitted). One of the most common of those exceptions-a search conducted pursuant to voluntary and valid consent-is the primary issue in the case *sub judice*. Because the government often asserts that a defendant consented in cases "where the police have some evidence of illicit activity, but lack probable cause to arrest or search," *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041, we carefully examine the government's claim that a defendant consented. Moreover, we note that not any type of consent will suffice, but instead, only consent that is "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Tillman,* 963 F.2d 137, 143 (6th Cir.1992); *see also Scott,* 578 F.2d at 1188–89. The determination of whether consent was valid is a fact-specific inquiry that must be determined by the totality of the circumstances. *See Riascos–Suarez,* 73 F.3d at 625. In conducting such an inquiry, the court should examine, inter alia, the following factors: "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Id.*

### C.

We agree with the government that there was no evidence of overt duress or coercion: there was no lengthy detention and interrogation; the officers wore plain clothes, with no visible weapons; the encounter occurred in a public place; the parties spoke in conversational tones;

Worley was calm and cooperative; and Worley's age, intelligence and education indicated the ability to freely consent.[10] However, we do not end our inquiry here, for where the government purports to rely on a defendant's statement to establish that valid and voluntary consent was rendered, we must also examine the content of that statement to ensure that it "unequivocally, specifically, and intelligently" indicates that the defendant consented. *Tillman,* 963 F.2d at 143. Thus, in meeting its burden, the government must also establish that Worley's statement "You've got the badge, I guess you can" was an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request. *See Jones,* 641 F.2d at 429 ("[A] search based on consent requires more than mere expression of approval to the search.").

We believe that the district court did not clearly err in concluding that the government failed to meet its burden in this respect. Indeed, in addition to reviewing the aforementioned factors in conducting its totality of the circumstances analysis, the district court also considered the following: Harvey's misunderstanding about the ticket and his insistence that the ticket was one-way when it was, in fact, round-trip suggested to Worley that any further disagreement was futile; Worley's subjective belief that he had no choice but to comply with Harvey's request to search the bag; Worley saw the officers' badges; Worley did not assist the officers in their search, nor did he make any additional statements which would indicate free and voluntary consent. In addition to these factors, we note that although law enforcement officials are not required to inform criminal suspects of their right to refuse

---

10. Although the district court did not err in concluding that there was no overt duress or coercion at work, we note that in conducting this analysis, "account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person

who consents." *Schneckloth,* 412 U.S. at 229, 93 S.Ct. 2041. Thus, consent may be involuntary not only when an officer uses force or the threat of force, but also when more subtle or implicit forms of coercion are present.

consent to a search, "knowledge of the right to refuse consent is one factor to be taken into account." *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041; *see also Riascos–Suarez*, 73 F.3d at 625. Here, Worley was not informed of his right to refuse consent. Further, an additional factor to be considered is the location and conditions under which Worley consented to the search. While the government aptly points out that the encounter occurred in a public place, we note that the public place was an airport. The Fifth Circuit has addressed the consent issue specifically in the context of airport stops, and we find the following observations from that circuit worth noting:

> [t]he nervousness that air flight often engenders, the need quickly to make connections for continuing one's journey, the mere surprise from being accosted in a crowded airport concourse by a law enforcement officer for no apparent reason, and the pressure to cooperate with police to avoid an untoward scene before the crowds of people, all make it easy for implicit threats or subtle coercion to exert tremendous pressure on an individual to acquiesce to the officer's wishes. In such a situation it would be easy to misinterpret acquiescence to an officer's demands as consent; acquiescence cannot, of course, substitute for free consent.

*United States v. Berry*, 670 F.2d 583, 596 (5th Cir.1982)(*en banc*)(footnote omitted)(citing *Bumper*, 391 U.S. at 548–49, 88 S.Ct. 1788). We find no clear error in the district court's analysis of these factors.

### D.

Despite the specific factors considered by the district court, the government seems to suggest that only the factors which it set forth merited consideration. However, there is no "magic" formula or equation that a court must apply in all cases to determine whether consent was validly and voluntarily given. Indeed, such an argument has been flatly rejected by this court and the Supreme Court. *See Schneckloth* 412 U.S. at 226, 93 S.Ct. 2041 (totality of the circumstances analysis does not "tur[n] on the presence or absence of a single controlling criterion" but must "reflec[t] a careful scrutiny of *all* the surrounding circumstances")(emphasis added); *Guimond*, 116 F.3d at 170 ("the Fourth Amendment requires consideration of *all* of the circumstances surrounding the encounter in question")(emphasis added). In this case, the government is, in essence, attempting to have the best of *all* worlds: the government wants to be free from the warrant requirement, the burden of proving that Worley voluntarily consented to the search, *and* this court's "clearly erroneous" standard of review. Based on the facts of this case, we decline to place the government in so favorable a position.

### IV.

Based on the foregoing, we conclude that the district court did not commit clear error in granting Worley's motion to suppress after determining that his statement, "You've got the badge, I guess you can," did not indicate consent to the search. To the contrary, we find that the district court's remarks from the bench in granting Worley's motion to suppress were thoughtful, well-reasoned and based on a thorough examination of the facts and circumstances before the district court. Accordingly, we AFFIRM the district court's judgment granting Worley's motion to suppress and REMAND for further proceedings consistent with this opinion.

DAVID A. NELSON, Circuit Judge, dissenting.

It is undisputed that when Officer Harvey requested permission to look in Mr. Worley's amphetamine-laden shopping bag, the first words uttered by Mr. Worley in response were, "You've got the badge." Mr. Worley's testimony before the magistrate judge suggested that these were his last words as well. Officer Harvey and Officer Clinton both testified, however,

that Mr. Worley went on to say, "I guess you can." The magistrate judge—who had an opportunity to observe Mr. Worley's demeanor on the witness stand, as well as the officers'—found that Worley did in fact say, "I guess you can." That finding stands unchallenged, and we must take it as given that Mr. Worley's testimony as to how he answered Officer Harvey's request was incomplete.

Mr. Worley further testified, in response to a series of pointed questions from his lawyer, that he did not feel he could say no to a police officer; that he did not feel he could walk away from Officer Harvey; and that he did not "feel ... [that he] had any choice in him looking in that Host Marriott bag."

Based on this and similar testimony given by Mr. Worley as to his subjective feelings, defense counsel argued that Worley "merely acquiesced to [sic] the officer's authority rather than giving his unequivocal, voluntary consent to the search." But pointing out that the officers had never asserted authority to conduct the search without consent and had not otherwise attempted to trick or coerce Mr. Worley into "acquiescence," the magistrate judge rejected defense counsel's argument. As a matter of law, the magistrate judge concluded,

"Defendant's subjective belief is not enough to negate voluntariness. Defendant 'must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police.' *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir.1995)."

Objectively, the magistrate judge went on to conclude, a reasonable police officer would understand Mr. Worley's answer to Officer Harvey's request as unequivocally affirmative:

"Defendant gave verbal consent with the words 'You've got the badge, I guess you can.' These words express consent to search within the context of the facts. *See United States v. Williams*, 754 F.2d 672, 675 (6th Cir.1985) (holding defen-

dant's response to request to search by saying 'no problem,' and response to subsequent request to search box within the suitcase with 'you're looking,' valid consent to search under the facts)."

"Furthermore, defendant's age, intelligence and education indicated the ability to freely consent; the questioning of defendant took place in public and was of short duration; defendant's experiences with law enforcement in 1991 and the early 1980's suggested a familiarity with his rights and with criminal procedure; and, there was no evidence whatsoever of coercion or intimidation by the officers. All of the evidence showed that defendant's consent was voluntary."

I agree—and the district judge did too, at first. Upon further consideration, however, and after acknowledging that "I did want Mr. Worley here," the district judge concluded that Mr. Worley's response "was not an unequivocal expression of free and voluntary consent. In fact, it was merely—it was—it was something of the opposite, it was an expression of futility in resistance to authority...."

With respect, I am not persuaded that a reasonable police officer standing in Officer Harvey's shoes would have taken Mr. Worley's words as the "opposite" of free and voluntary consent. The consent was rueful rather than cheerful, to be sure, but it was uncoerced consent. Mr. Worley—no stranger to police procedure—was not forced to give an affirmative response to the officer's request, and the response clearly was affirmative. "I guess you can," as a matter of plain English, does not mean "I guess you can't."

To the extent that the district court's granting of the motion to suppress rests on a conclusion of law, I think the conclusion was erroneous. To the extent that it may rest on a finding of fact, I think the finding was clearly erroneous—and I am strengthened in this view by the circumstance that although the magistrate judge was given an opportunity to hear from Mr.

Worley in person, the district judge was not.

It seems to me, in short, that the magistrate judge got it right. I would therefore reverse the order in which the district court granted the motion to suppress.