**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony FOSTER, Defendant–**
**Appellant.**

No. 01–5755.

United States Court of Appeals,
Sixth Circuit.

May 5, 2003.

BEFORE: MARTIN, Chief Circuit Judge, DAUGHTREY, Circuit Judge, and O'MALLEY, District Judge.*

PER CURIAM.

The defendant, Anthony Foster, pleaded guilty to one count of possession with intent to distribute cocaine base in exchange for an agreement by the government not to prosecute him on a similar count of possession with intent to distribute cocaine powder. The district judge sentenced Foster to 120 months in prison, but recognized the defendant's reservation of his right to appeal to this court the decision to deny a motion to suppress the drug evidence. We find no reversible error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of November 6, 1999, Kentucky State Trooper Joseph Johnson stopped a vehicle traveling south on Interstate 75 near Crittenden, Kentucky. According to Johnson, the maroon Buick, driven by Anthony Foster, ap-

---

* The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

peared to have no illuminated license tag, in violation of applicable Kentucky statutes. After approaching the vehicle, however, Johnson noticed a temporary license tag affixed vertically, rather than horizontally, to the rear windshield of the car. It was not illuminated. As a result, Johnson approached the driver and asked to see Foster's driver's license. When the defendant stated that he had no license with him because it had been revoked, Johnson initiated efforts to confirm the driving status of the defendant by contacting the police dispatcher.

Because Foster had, in fact, never been licensed to operate a motor vehicle, efforts to obtain information from the defendant's home state of Illinois also proved futile. Trooper Johnson continued to investigate the situation, and when he was unable to document the registration of the vehicle itself, he called for assistance from another available trooper. Foster was admittedly very cooperative with the officers' requests and even handed Johnson an identification card in an effort to expedite matters. A passenger in the car also provided paperwork that indicated that an individual other than Foster was the registered owner, but efforts to corroborate that information also failed. Johnson then allegedly asked the defendant whether the troopers could look inside the trunk of the Buick. Although Johnson and another trooper testified at a suppression hearing that Foster freely agreed to the inspection by retrieving the keys from the ignition and unlocking the trunk, the defendant himself maintained that the law enforcement officers directed him to open the trunk and offered no opportunity to withhold consent.

Within 25–30 minutes after the initial stop of the defendant's vehicle, the officers searched the trunk and found a paper sack in that storage area. The sack contained a significant quantity of cocaine powder and cocaine base packaged for distribution. Once the container was discovered, however, Foster fled on foot, only to be recaptured later in Illinois. Following the defendant's flight from the scene of the traffic stop, the police conducted a further examination of the vehicle at the roadside and confiscated a cellular telephone plugged into the car's cigarette lighter. Eventually, the phone was activated and a revealed telephone number assigned to Foster.

After his arrest and arraignment, Foster filed a motion with the district court to suppress the contraband and the telephone seized from the automobile. In that motion, he contended that the initial traffic stop was illegal, that the detention was unconstitutionally lengthy, that the troopers had no consent to search the trunk, and that the search and seizure of the cellular phone violated Fourth Amendment principles. When the district judge denied the motion in its entirety, Foster entered a guilty plea but specifically reserved the right to appeal the propriety of the suppression decision to this court.

Based upon the defendant's extensive criminal history, the district court sentenced Foster to 120 months in prison. In accordance with the reservation of rights made in the plea agreement, however, the defendant now challenges the legal validity of the district court's decision to deny the motion to suppress the evidence of his guilt.

## DISCUSSION

### I. Legality of Initial Stop of Vehicle

On appeal, Foster first contends that the initial stop of the vehicle he was driving was improper and, consequently, that any information or evidence gathered from that detention cannot be used against him in court. The defendant's assertion of unconstitutional conduct is premised upon Foster's belief that he had violated no

Kentucky traffic law that would justify the stop. As we have consistently held, however, "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993) (en banc)). "The probable cause determination turns on 'what the officer knew *at the time he made the stop.*'" *Id.* (quoting *Ferguson*, 8 F.3d at 391) (emphasis in original).

 In this case, Trooper Johnson testified that on the night of the stop, he could not see an illuminated license plate on Foster's vehicle due to darkness. Because Kentucky Revised Statute § 186.170(1) provides unequivocally that "[p]lates shall be kept legible at all times and the rear plate shall be illuminated when being operated during the [period from one-half (½) hour after sunset to one-half (½) hour before sunrise]," *see also* K.R.S. § 189.030, the trooper clearly had probable cause to stop the vehicle for an apparent violation of applicable traffic laws.

Foster argues forcefully that he did, in fact, have a temporary tag taped inside his rear windshield that and no state statute or regulation specifically requires that temporary tags be illuminated at night. According to the defendant, therefore, there was no probable cause for Johnson to believe Foster was in violation of any traffic regulation. However, the lack of a specific provision in the Kentucky code dealing with temporary license tags does not necessarily imply that they need not also be illuminated at night. More logical-ly, the absence of a provision exempting temporary tags from the general applicability of K.R.S. § 186.170(1) supports the proposition that they are subject to the same illumination requirements as are permanent plates.[1] Moreover, the mere fact that few stops or arrests are actually made for violation of that code provision does not diminish its applicability.

## II. Propriety of the Detention of the Defendant

The next question presented by this appeal is whether, after legally stopping Foster, the law enforcement officers illegally detained the defendant beyond the time necessary to resolve the traffic incident that precipitated the encounter. Our analysis of this allegation of error is governed by our decision in *United States v. Mesa*, 62 F.3d 159 (6th Cir.1995). In that case, we held simply that "[o]nce the purposes of the initial traffic stop were completed, ... the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Id.* at 162.

Had Foster been stopped solely for failing to display a registration plate on his vehicle, an argument could be made that Johnson's discovery of the temporary tag obviated any further need to detain the defendant and that, as a result, no further investigation was proper. This, however, was not the case here. Testimony before the district court established unequivocally that Foster was stopped both for failure to display the license plate properly and for failing to illuminate it. Even though Foster now insists that he could not be stopped for failing to illuminate a *tempo-*

---

**1.** At oral argument, the parties agreed that the temporary tags in this case were issued in Illinois, not in Kentucky. Although such information does not appear in the record now before us, we are confident that no "full faith and credit" challenge to the arrest under Arti-cle IV, § 1 of the United States Constitution is viable, because the Illinois statutes are essentially identical to Kentucky's in all aspects relevant to this dispute. *See, e.g.,* 625 Ill. Comp. Stat. 5/12–201(c)(2002).

*rary* license tag because no Kentucky statute specifically requires that he do so, we conclude that the Commonwealth's statutory scheme, as presently written, contains *no such exemption.* Because *no* statute exempts drivers of vehicles with temporary plates from the display *and* the illumination requirements of K.R.S. § 186.170(1), there was probable cause to believe that the defendant's vehicle was in violation of a traffic regulation. Moreover, the fact that the temporary tag appeared to be taped sideways in the back window could create a reasonable suspicion that the driver was attempting to obscure the information that appeared on the tag, thus justifying further investigation by the trooper.

■ Armed with a reasonable basis to stop the vehicle, Johnson was also authorized to request documentation concerning the vehicle's registration and Foster's license to operate the car. Once the defendant was unable to produce such information, a violation of K.R.S. § 186.620(2), the trooper was then permitted to seek verification of the explanation offered by Foster through the police's computer records. *See, e.g., United States v. Erwin,* 155 F.3d 818 (6th Cir.1998) (en banc) (after the reason for the stop is satisfied, police may continue detention if there is then reasonable and articulable suspicion that the defendant is engaged in other criminal activity). It was that attempt at verification that accounted for the vast majority of the time the defendant was detained at the side of the interstate. Such detention was, therefore, proper under the unique facts of this case and does not give rise to a legitimate cause of action for a Fourth Amendment violation.

### III. Validity of Consent to Search the Vehicle

Foster next contends that, even if the stop and detention were proper, Johnson had no constitutional justification for searching the trunk of the car the defendant was driving. The district court concluded, however, that Foster knowingly and voluntarily gave his consent for the search, thus obviating the necessity for the government to establish probable cause for the intrusion.

The evaluation of the voluntariness of an alleged consent to search "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consequently, a district court's decision regarding consent will not be overturned on appeal unless that determination is clearly erroneous. *See United States v. Worley,* 193 F.3d 380, 384 (6th Cir.1999).

■ In this case, defendant Foster testified that he retrieved the car keys from the ignition and unlocked the trunk only because he believed that the officers directed him to do so and that he had no other option but to comply with their demand. Such capitulation, argues the defendant, is "merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request," *id.* at 386, and is not tantamount to an unequivocal statement of free and voluntary consent. However, the government witnesses who testified at the suppression hearing claimed that Foster was asked whether the police could look in the trunk and that the defendant freely and voluntarily consented to that search, obtained the keys, and unlocked the locked compartment himself. The district judge had the opportunity to view the witnesses and assess their credibility, and he was able to review the videotape of the encounter made by a camera in the trooper's patrol car. After doing so, he concluded that the defendant freely consented to the

search. Based upon the record testimony before this court on appeal, such a determination cannot be classified as clear error.

Likewise, there is no merit to Foster's assertion that the officers exceeded the scope of the consent by looking into the paper bag found in the trunk. Having obtained valid consent to examine the trunk, the troopers were, in the absence of a revocation of consent by the defendant or express limitations on the scope of that consent, justified in examining the contents of the sack found there. *See Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

### IV. Search of the Cellular Telephone

■ Finally, Foster argues that the police infringed upon his Fourth Amendment rights when the troopers seized a cellular telephone plugged into his vehicle's cigarette lighter and when the police later activated that phone and recorded the listed telephone number. By the time the officers confiscated the phone, however, the defendant had fled from the scene and had abandoned the vehicle he was driving. Such abandonment extinguishes any reasonable expectation of privacy the defendant might once have had in the property, together with any accompanying Fourth Amendment protections. *See United States v. Oswald,* 783 F.2d 663, 666 (6th Cir.1986).

Furthermore, even had a violation of Foster's Fourth Amendment rights occurred as a result of the seizure of the cell phone, any error in its admission was harmless beyond a reasonable doubt. According to the testimony offered at the suppression hearing, only the phone number associated with the device was recovered from the seized phone itself. Because the defendant does not dispute the fact that he gave the troopers his correct name and even offered them an identifica-

tion card in an effort to establish his right to operate the motor vehicle, the phone number at issue would have inevitably been discovered by the police through routine investigation. This claim of error is, therefore, also without merit.

### CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.