**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Timothy M. JOHNSON, Defendant–Appellant.**

**No. 03–3048.**

United States Court of Appeals, Sixth Circuit.

Aug. 31, 2004.

Sharon L. Long, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

Sonja C. Rowan, Federal Defender's Office, Akron, OH, for Defendant–Appellant.

Before: KEITH and CLAY, Circuit Judges; and O'MEARA, District Judge.*

CLAY, Circuit Judge.

Defendant, Timothy M. Johnson, appeals from the judgment of conviction and sentence, entered on December 19, 2002, by the district court for one count of firearm possession by a felon, in violation of 18 U.S.C. § 922(g)(1). Defendant challenges the trial court's denial of his pre-sentence motion for the suppression of evidence of a firearm obtained during an allegedly non-consensual search of Defendant's home, in violation of his Fourth Amendment right against warrantless searches and seizures. For the reasons below, the Court **AFFIRMS** the district court's judgment.

## I.

### BACKGROUND

#### *Procedural History*

Defendant, Timothy M. Johnson, was charged in a one-count indictment in the district court on June 13, 2002, with the offense of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On August 1, 2002, Defendant filed a motion to suppress evidence alleging that the warrantless search of his residence was illegal and in violation of his Fourth Amendment rights. Defendant argued that the Akron, Ohio police conducted the warrantless search without consent or the presence of exigent circumstance. The government opposed Defendant's motion on August 15, 2002.

The district court held a suppression hearing on October 2, 2002, and subsequently denied Defendant's motion to suppress. Thereafter, Defendant entered a conditional guilty plea to the offense of being a felon in possession of a firearm pursuant to a written plea agreement. On December 19, 2002, the district court sentenced Defendant to 33 months incarceration, three years of supervised release, and $100 special assessment. On December 23, 2002, Defendant filed this timely appeal.

### *Substantive Facts*

In or around May of 2002, Kevin Holmes temporarily moved into his cousin's, Defendant's, apartment at 53 East Emerling Avenue in Akron, Ohio, allegedly bringing with him a rifle. On May 9, 2002, at approximately 6:00 p.m., Akron police officers Bassett and Alexander were dispatched to an apartment complex at 45 East Emerling Avenue, in response to a reported fight involving a firearm. When the officers arrived at the scene they were met by the victim of the altercation, Otis Davis. Davis explained that he was in-

---

* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

volved in a fight with Defendant over Defendant's relations with Davis' girlfriend. Defendant alleges that he was initially attacked by Davis, but was then able to retreat to his apartment with his cousin Holmes. Davis reported that Defendant ran to his apartment to retrieve a gun, which he then pointed at Davis from Defendant's upstairs apartment window.

Officers Basset and Alexander proceeded to the back door of Defendant's second floor apartment, followed by Officer Farrar who later arrived to assist. Officer Bassett knocked on the door to the apartment three separate times before Defendant and Holmes opened the door. Bassett testified that Defendant opened the door and stood halfway out onto the porch, with Holmes standing behind Defendant in the doorway. The officers explained that their presence was a result of Davis' complaint regarding Defendant's alleged intimidation of Davis with a firearm from Defendant's second story window. Officer Bassett told the Defendant, "[s]ir, I have to make sure you have no weapons on you[,]" and proceeded to then engage in a *Terry* pat down of Defendant's person for the officers' safety. Defendant complied with the pat down and Holmes stood behind Defendant until the pat down was complete.

Officer Alexander then asked for consent to search Defendant's apartment to ensure there were no guns inside. Officer Bassett testified that Defendant was more than willing to help. Officer Alexander testified that Defendant replied to the officer's request stating "[i]f you need to do that, that is fine." After obtaining consent, Officer Alexander entered Defendant's apartment followed by Officer Bassett. Officer Alexander then found and retrieved the gun—a .22 caliber rifle—and several rounds of ammunition.

Defendant was arrested upon Officer Bassett's check of Defendant's record, revealing that Defendant had a previous felony conviction. Bassett then charged Defendant with aggravated menacing and being a felon in possession of a firearm. Defendant was then transported to the police station and given his *Miranda* warning. Defendant denied his involvement in the menacing of Davis, as well as his ownership of the rifle. Defendant claims that the time frame in which the alleged request for consent, and the alleged subsequent compliance, took place was under two minutes. The entire encounter between the officers and Defendant took anywhere from five to ten minutes.

During the suppression hearing, Officer Bassett testified that Defendant seemed like an educated person, who had no problem communicating. Bassett also testified that the officers were all in uniform that day, no weapons were drawn, and no threats were made to obtain Defendant's consent. Bassett further testified that the Defendant and Holmes were not ordered to come outside of the residence.

Officer Alexander testified that no officers drew weapons or threatened Defendant. Alexander also stated that he was standing facing Defendant while they spoke in a cordial manner. During the suppression hearing, Kevin Holmes also testified that the officers did in fact ask him and Defendant to step outside of the apartment, where they both were frisked for weapons. Holmes' testimony, however, did not otherwise contradict that of Officers Alexander and Bassett.

## II.

## DISCUSSION

Defendant now argues that the district court erred in denying his motion to sup-

press evidence of the firearm found during the warrantless and non-consensual search of Defendant's residence. In reviewing a district court's suppression determinations, this Court reviews findings of fact for clear error, and legal conclusions *de novo. United States v. Stewart,* 306 F.3d 295, 304 (6th Cir.2002). The issue presented—whether consent to enter and search a home was actually given voluntarily—is an issue of fact, which will be overruled only if the district court's findings were clearly erroneous. *United States v. Rose,* 889 F.2d 1490, 1494 (6th Cir.1989).

Defendant argues the district court erred in denying his motion to suppress because his consent was not voluntarily given when the officers requested entry into his home without a warrant. Defendant argues that because the interval of time between the officers' arrival at Defendant's doorstep and the officer's entrance into his home was a mere two minutes, Defendant could not have possibly intelligently and voluntarily consented to a valid search. The government argues that the district court correctly denied Defendant's motion to suppress because the district court's assessment of the totality of the circumstances surrounding the consent established that the officers did in fact secure consent voluntarily.

It is well established that the Fourth Amendment prohibits the entry of law enforcement into one's home without a search warrant, exigent circumstances, or voluntary consent. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The determination of whether consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227–28, 93 S.Ct. 2041, 36 L.Ed.2d 854

(1973). "Consent must be proved by clear and positive testimony and must be unequivocal, specific, and intelligently given, uncontaminated by any duress and coercion." *United States v. Williams,* 754 F.2d 672, 674–75 (6th Cir.1985). Moreover, in a warrantless search, the government bears the burden of proving consent. *United States v. Jones,* 846 F.2d 358, 360 (6th Cir.1988).

The Supreme Court has determined that "the method of an officer's entry into a dwelling [is] among the factors to be considered in assessing the reasonableness of a search or a seizure." *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). In *United States v. Worley,* this Court held that the content of the statement the government argues constitutes consent to search is also significant in our analysis. 193 F.3d 380, 384 (6th Cir.1999). In *Worley,* the government failed to establish consent when, confronted by two police officers at an airport, the defendant responded to the officers, who asked to examine his ticket and identification and then to look into his bag. stating "you've got the badge, I guess you can." 193 F.3d at 383. The Court recognized that there was no overt evidence of duress, the officers wore plain clothes and did not brandish weapons, the encounter occurred in a public place, the parties spoke in conversational tones, the defendant was cooperative, and the defendant's intelligence and age suggested the ability to freely consent. *Id.* at 386. Nevertheless, the Court found that the government failed to demonstrate that Worley's response "was an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." *Id.*

In the instant case, the testimony presented at the suppression hearing led the

district court to determine that Defendant voluntarily consented to the search of his residence. During the suppression hearing, the district court made very specific findings of fact regarding the totality of the circumstances surrounding the consent of the search:

In the instant case, first of all, the Court has uncontroverted testimony that the defendant appeared to be intelligent and educated and understood the conversations between him and the police. Secondly, all witnesses agreed that the total amount of time for this occurrence was between 5 to 15 minutes. Therefore, the length of the detention was, in this Court's mind, extremely short.

Third, this Court cannot classify the questioning as intense or coercive. Quite the contrary. We do not have a situation in this case like the situation in [*Worley*] where the DEA agent insisted that a round trip ticket was in fact a one-way ticket, thereby giving the impression of futility in refusing to consent.

We have, according to the police officers who testified in this case, a statement by Officer Alexander that, and I'm using Officer Alexander's words, quote, "To clear this thing up, we need to check the house. Do you mind?" With a response of, quote, "If you need to."

That was officer Alexander's testimony. Officer Bassett's testimony was slightly different, but to the same effect.

Kevin Holmes testified the he, quote, "didn't really hear everything so clearly. I mean, it was just chatter."

So Holmes does not contradict the testimony of the police officers regarding the issue of the defendant giving consent to search.

In addition, the police have indicated in this case that the defendant was not ordered out of the house and put against a wall for a frisk. Further, they testified that they did not threaten the defendant in any way or raise their voices.

This fact was corroborated by Holmes who indicated that voices were not raised and they were not given verbal threats.

The Court has absolutely no reason to disbelieve the police officer's testimony, given the totality of their testimony. The overwhelming majority of the testimony of the police officers was in fact corroborated or at least not contradicted by Holmes.

Regarding the issue of being ordered outside and put up against the wall. Holmes testified that on two separate occasions, and when I say two occasions, I mean two times during his direct testimony, that they were told to step outside, and that's on page 87 and page 88 of the hearing transcript.

Again, this Court doesn't have any reason, given the totality of the testimony, to disbelieve the police officers when they have indicated that they did not order him out of the house and put him up against the wall.

Fourth, all witnesses agree that the defendant was very cooperative during the short detention.

Fifth, only three police officers were present and in fact Holmes said he only saw two police officers because all three were not at the door at the same time, so we do not have an overwhelming number of police officers present during the short detention.

Sixth, it's uncontroverted that no weapons were drawn at any time.

Seventh, there was no physical touching by the police officers other than a very quick *Terry* patdown.

And, eighth, the worst case scenario, and I will use Holmes' testimony, is that the officers either knocked hard using a police knock or banged on the door more than once. His testimony alters between knocking hard and banging. And that is the worst case scenario.

This Court finds that the police in this case conducted themselves absolutely appropriately, given the totality of the circumstances as the Court just reviewed them for the record, the Government has met its burden of proof, that consent was voluntarily given by the defendant, and quite frankly, the Court will go further to say that if this Court were to find that the consent was not voluntary in this case, the Court cannot imagine any situation where consent could be considered voluntary where a defendant is merely confronted with police officers in full uniform because that is the only potential coercive element this Court can find in this case. There is nothing more, and the case law simply does not support such a finding.

(J.A. at 184–87.)

Unlike in *Worley,* in the instant case the content of the statement of consent was not a "response conveying an expression of futility in resistance to authority." 193 F.3d at 383. Based on these findings, this Court agrees with the district court's determination that the search of Defendant's residence was consensual when looking at the circumstances in their totality.

Defendant's primary issue, however, with the district court's factual findings is the district court's failure to address Defendant's allegation that the shortened length of time in which Defendant had to consent could not have possibly garnered a knowing and voluntary consent to search Defendant's home. Defendant concedes the instant case is not one where a lengthy detention resulted in duress or formed a basis for coercion. *United States v. Ivy,* 165 F.3d 397, 399–300 (6th Cir.1998) (stating the prolonged length of defendant's detention was particularly significant when determining the consensual nature of the search). However, Defendant's allegation that he was not given enough time to knowingly and voluntarily consent, in violation of his Fourth Amendment right, is not supported by case law in this Circuit. Essentially, this Court's analysis of the duration of detention prior to consent, is relevant when trying to decipher overbearing coercive methods used to garner such consent. *Id.* It would be unreasonable for the Court to determine that an officer is required, as a matter of law, to give a certain amount of time to a defendant to answer a request for consent, absent any other factors leading the Court to believe that consent was anything but voluntary.

Furthermore, under *Schneckloth,* even if the brevity of Defendant's detention leading to his consent to a search was a factor in the overall judgment, it is not to be given controlling significance. 412 U.S. at 219. There is no indication in this record that Defendant was a newcomer to the law, mentally deficient, or unable in the face of a limited detention to exercise a free choice. *Id.*

Given the totality of the circumstances, the district court did not err in its factual findings regarding Defendant's voluntary consent to have his residence searched; therefore, the seizure of the gun inside the home was not done so in violation of Defendant's Fourth Amendment right.

For the aforementioned reasons, this Court **AFFIRMS** the district court's judgment denying Defendant's pre-trial suppression motion.