**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0251n.06

**No. 17-6268**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>May 23, 2018<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| FRANCISCO HERRERA, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    BOGGS, SILER, and SUTTON, Circuit Judges.

BOGGS, Circuit Judge.  Francisco Herrera appeals the denial of his motion to suppress firearm evidence seized from a search of his vehicle during a traffic stop.  Following the denial of his motion to suppress, Herrera pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  We affirm.

**I**

**a.  Factual Background**

This case concerns a simple factual dispute regarding a traffic stop.  On July 19, 2016, Herrera was traveling eastbound on I-40 when he was pulled over by West Tennessee Drug Task Force Special Agent Shawn Crouch, ostensibly for impeding traffic in the left lane, in violation of Tenn. Code Ann. § 55-8-115(a).[1]

---

[1] The statute requires that vehicles "be driven upon the right half of the roadway," unless the vehicle is overtaking and passing another vehicle, or unless another exception applies.  Tenn. Code Ann. § 55-8-115(a)(1).

Crouch activated his body camera as he initiated the traffic stop. The footage begins with Crouch describing Herrera's vehicle and the reason for initiating the traffic stop: that four other vehicles had been "piled up" behind Herrera but that he had not moved to the right lane, despite the right lane being clear. Crouch provided this same version of events during the suppression hearing.

Herrera's version of the events is somewhat different. Herrera testified that he had been driving in the right lane when traffic slowed to approximately 35–40 miles per hour. Herrera claims that he moved to the left lane to avoid this slow-moving traffic. Herrera did not testify that any vehicles were piled up behind him when he moved to the left lane.

In any event, once Herrera had been pulled over, Crouch told Herrera that he had been pulled over for impeding traffic in the left lane. Herrera did not dispute he had impeded traffic, saying, "[y]eah, I understand that, I'm not going to argue with you." Crouch also asked Herrera a series of identification questions. Crouch asked for Herrera's driver's license but Herrera responded that he did not have it. Herrera also gave inconsistent information about his travel plans. Herrera did provide Crouch with a vehicle registration form, which listed Melvim M. Herrera as the owner of the vehicle, and Herrera confirmed that that was his name. Crouch then asked for Herrera's date of birth, but Herrera hesitated when providing it. Crouch also asked for Herrera's social security number but Herrera struggled to answer, saying that he forgot the number. Crouch asked about Herrera's criminal history, and Herrera said that he had been arrested for stealing a car but that he was "good" to be driving now. Crouch returned to his vehicle to verify the name "Melvim Herrera" and the birthdate that Herrera had provided, by calling the information in to the Blue Lightning Operation Center (BLOC) database.

While waiting for a return call from BLOC, Crouch wrote Herrera a warning citation for impeding traffic while the two continued making small talk. Based on Herrera's difficulty answering the earlier basic identification questions, Crouch remained suspicious of Herrera, and asked Herrera additional questions about his travel plans. Crouch asked whether there was contraband inside his vehicle, including whether there were any guns inside. Herrera stated that there were no guns inside his vehicle. Crouch then asked, "Can I search your vehicle?," to which Herrera responded casually, "Sure, umm, whatever."

While waiting for backup to arrive, BLOC called Crouch with information that suggested that Herrera had provided incorrect identifiers. Crouch then searched Herrera's vehicle, finding four guns and ammunition in the center console as well as a wallet with a driver's license for *Francisco* Herrera. Herrera apologized to Crouch for lying about his identification information. Crouch submitted the new name and date of birth to BLOC. When asked why he had provided false information, Herrera told Crouch that he would find out in a minute.

Sure enough, shortly thereafter, BLOC informed Crouch that Herrera had an outstanding kidnapping arrest warrant out of California and had previously been convicted of a felony in California.

### b. Procedural Background

A federal grand jury charged Herrera with four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Herrera filed a motion to suppress the firearm evidence obtained from the search. The district court conducted an evidentiary hearing and denied the motion to suppress. Herrera pleaded guilty but reserved the right to appeal the denial of the motion to suppress. Herrera has timely appealed.

**II**

On appeal, Herrera essentially raises three arguments as to why his motion to suppress should have been granted. First, Herrera argues that Crouch lacked probable cause to initiate the traffic stop, as required by this court's *Terry*'s jurisprudence for alleged civil infractions. *Terry v. Ohio*, 392 U.S. 1 (1968). Second, Herrera argues that the stop (and subsequent questioning) were not sufficiently limited in duration or in scope, rendering it unreasonable under *United States v. Saucedo*, 226 F.3d 782, 789 (6th Cir. 2000). Third, Herrera argues that he did not consent voluntarily to a search of his vehicle. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

The district court's factual findings, including credibility determinations, will be reviewed for clear error. *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012). A factual finding is clearly erroneous only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). And we review that evidence "in the light most likely to support the district court's decision." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (quoting *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008)). The district court's conclusions of law are reviewed de novo. *Jackson*, 682 F.3d at 452.

**III**

### a. The District Court Did Not Clearly Err in Accepting Crouch's Version of the Facts, Which Established Probable Cause to Initiate the *Terry* Stop

*Terry* traffic stops constitute a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). There are "two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop

for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). Determining whether an officer had probable cause requires a fact-dependent analysis of what the officer knew at the time of the stop. *United States v. Valdez*, 147 F. App'x 591, 594 (6th Cir. 2005).

Here, Herrera was ostensibly stopped for violating Tenn. Code Ann. § 55-8-115(a)(1), which would be a civil infraction. Thus, Crouch needed probable cause to initiate the stop. We have been presented with two factual versions of the stop, one of which clearly provided Crouch with probable cause and one of which did not. Whenever "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

Here, while either version of events was *possible*, the district court did not err in concluding that Crouch's version of events was more likely. In reaching this conclusion, the district court properly reviewed Crouch's body-camera footage, which suggested that traffic was moving normally in the right lane as soon as the stop was initiated, casting doubt on Herrera's version of events. The court also noted that Herrera's assertion that traffic had slowed in the right lane to 35–40 miles per hour was "not believable" on its face. And when Crouch told Herrera that he had been pulled over for impeding traffic in the left lane Herrera replied, "[y]eah, I understand that, I'm not going to argue with you." And the district court was well within its discretion to deem Crouch's testimony more credible than Herrera's testimony. After all, Crouch's testimony was consistent with the video footage and Herrera's willingness to lie about

his identity during the stop made it somewhat more likely that Herrera would have lied during his suppression-hearing testimony.

Herrera points to Crouch's admission that the vehicles behind Herrera may have been unlawfully following too closely. However, that the vehicles traveling behind Herrera may have been committing another civil infraction does not diminish the probable cause that Crouch had to stop Herrera's vehicle for *his* infraction.

The district court did not clearly err in accepting Crouch's version of the facts, which established probable cause to initiate a traffic stop.

### b. The District Court Did Not Clearly Err in Concluding that the Stop Was Reasonable in Duration and Scope

Herrera also argues that the duration of the traffic stop and Crouch's questioning of Herrera rendered the stop unreasonable under the Fourth Amendment. Herrera is correct that an otherwise lawful *Terry* stop becomes unlawful if the officer's conduct during the stop was not "reasonably related in scope to the circumstances that justified the interference in the first place." *Saucedo*, 226 F.3d at 789 (quoting *Terry*, 392 U.S. at 20). For example, an officer may not unreasonably extend the length of the roadside detention. However, an "officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

Here, Herrera argues that Crouch "stall[ed] while writing the warning citation," giving Crouch more time to ask questions about Herrera's travel plans and the contents of his vehicle. It is true that Crouch took his time filling out the warning citation, but Crouch's questions could not have "measurably extend[ed] the duration of the stop" because Crouch was still waiting to hear back from BLOC about Herrera's (faulty) identification information. This situation is

similar to that in *United States v. Garrido-Santana*, 360 F.3d 565, 574–75 (6th Cir. 2004), in which a police officer asked the defendant whether the vehicle contained any contraband while the officer was completing the necessary paperwork and waiting for the background check to clear. Just as in *Garrido-Santana*, Herrera granted consent to search the vehicle prior to the officer receiving the results of the background check. As a result, Crouch's conduct did not measurably extend the duration of the stop.

### c. The District Court Did Not Clearly Err in Concluding that Herrera Gave Voluntary Consent to Search His Vehicle

Next, Herrera argues that the firearm evidence seized from a search of the vehicle must be suppressed because Herrera did not give voluntary consent. Whether the consent was voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 248–49. The defendant's consent must have been "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)). However, a "defendant must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police." *United States v. Higgins*, 127 F. App'x 201, 204 (6th Cir. 2005) (quoting *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995)). Because voluntariness is question of fact, the "district court's finding of voluntary consent will be reversed only if clearly erroneous." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998).

Here, the district court did not clearly err in concluding that Herrera voluntarily consented to the search. As the video footage confirms, Crouch did not apply any sort of inappropriate pressure when speaking with Herrera. And Herrera's language and tone of voice conveyed voluntary consent to the search, rather than mere acquiescence.

Herrera attempts to analogize this case to *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999). But *Worley* is distinguishable for several reasons. First, the posture of the case was materially different. There, we were reviewing the district court's *grant* of the motion to suppress, after the district court made the factual finding that the consent was not voluntary. Thus, we merely held that the district court did not clearly err by concluding that the consent was not voluntary. *Id.* at 386. Here, the tables are turned. Moreover, there, the defendant's statement to police was "You've got the badge, I guess you can [search]," which suggested that the defendant may have merely been acquiescing to the police officer or believed that resistance was futile. *Ibid.* But here, Herrera replied, "Sure, umm, whatever," in a manner suggesting that he was granting broad consent to search "whatever."

Herrera next argues that because Crouch asked Herrera a series of "gotcha!"-style questions like, "[a]re there any guns in the vehicle?" (to which Herrera lied and said no) Herrera felt trapped into granting consent to search. After all, *if there is nothing illegal in the car, why not consent to the search?* Handling this quagmire is undoubtedly uncomfortable, but it is not an interest that the Fourth Amendment protects. *See Ohio v. Robinette*, 519 U.S. 33, 39–40 (1996); *Garrido-Santana*, 360 F.3d at 576.

Finally, Herrera argues that that the questions about whether he had any contraband in the vehicle, which immediately preceded the request for consent to search, should have been accompanied by a *Miranda* warning. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Not only was this *Miranda* argument not raised below, but it is also meritless. *Miranda* is only triggered during a custodial interrogation. And a traffic stop does not constitute custody, for the purposes of *Miranda*. *See Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) ("Thus, the temporary and

relatively nonthreatening detention involved in a traffic stop or *Terry* stop . . . does not constitute

*Miranda* custody.").

The district court did not clearly err in concluding that Herrera gave voluntary consent to

search his vehicle.

**IV**

For the foregoing reasons, we AFFIRM the district court's denial of Herrera's motion to

suppress.