*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 05-5014

JAMES ANDERSON BUCKINGHAM,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 04-10015—James D. Todd, Chief District Judge.

Argued:  October 25, 2005

Decided and Filed:  January 11, 2006

Before:  KEITH and BATCHELDER, Circuit Judges; OBERDORFER, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.  **ON BRIEF:**  April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

      OBERDORFER, District Judge.  James Anderson Buckingham appeals his conviction and sentence for possession of a firearm by a convicted felon.  Buckingham contends that the district court (1) erred in denying his motion to suppress evidence as the fruit of an illegal search and (2) plainly erred in assuming the mandatory nature of the United States Sentencing Guidelines.  We agree that the district court erred in upholding the contested search without addressing Buckingham's argument that the search could not be premised on his initial, oral consent because he withdrew that consent.  *See Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999) ("[T]he consenting party . . . at any moment may retract his consent.").  We further conclude that the record on appeal is insufficient to affirm the district court decision on the alternative theory (not addressed

_____

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

by the district court) that Buckingham's subsequent, written consent was valid (i.e., voluntary and unequivocal). *See United States v. Worley*, 193 F.3d 380, 385-86 (6th Cir. 1999) (requiring proof by "clear and positive testimony" that the asserted consent was "voluntary" and "unequivocally, specifically, and intelligently given") (quotation marks omitted). Accordingly, we vacate Buckingham's conviction and remand to the district court for reconsideration of the motion to suppress in light of this opinion. Because we vacate his conviction, we do not reach Buckingham's arguments regarding his sentence; we anticipate that if he is found guilty in the remanded proceeding, the trial court will re-sentence him *ab initio*.

## I. BACKGROUND

On or about the night of October 31, 2003, Milan, Tennessee police officer John Foren pulled over a vehicle operated by Buckingham. Officer Foren initially decided to pull Buckingham over after noticing that only one of his two headlights was operating. After the stop, Foren further noticed that Buckingham's car registration had expired and that he and his passenger, Jeanne Hopper, were acting "suspicious[ly]." Suppression Hr'g Tr. at 6-7, 21 (JA 24-25, 35). After ensuring that Buckingham's driver's license was valid, however, Foren apparently decided not to issue a citation for either the defective headlight or the expired registration.

As he returned the license, Foren asked if he could search the car. Buckingham responded "Sure, I reckon so" and, at Foren's request, stepped out of the car. Suppression Hr'g Tr. at 33 (JA 44). Foren next presented Buckingham with a written consent form and asked him to sign it. By this time, approximately three or four additional officers in at least two additional police cars had arrived on the scene. Buckingham balked at signing the form, leading to the following colloquy, as described by Officer Foren: "A: . . . . [T]he other officer, . . . a senior patrolman, advised [Buckingham] it was a yes or no answer. He had the right to say yes. He had the right to say no as far as signing the form or allowing consent. Q: And what did [Buckingham] do then? A: He said no." *Id.* at 11-12 (JA 29-30). Foren thereafter radioed for a contraband-sniffing dog. Four to five minutes after this call (which Buckingham apparently overheard), Buckingham decided to sign the consent form and did so.

Foren searched the car, where he discovered two open beer cans and a loaded, semi-automatic pistol. He arrested Buckingham. Subsequently, the United States indicted Buckingham for possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g).

Before trial, Buckingham moved on Fourth Amendment grounds to suppress evidence of the firearm. He argued that Foren "was without reasonable suspicion or probable cause to search the vehicle." Mot. to Supp. Evid. at 1 (filed June 10, 2004) (JA 10). At a subsequent hearing on the motion, the prosecution argued that Buckingham had consented to the vehicle search and, thus, that it need not otherwise justify it. The prosecution conceded that Buckingham had apparently withdrawn his initial, oral consent. *See* Suppression Hr'g Tr. at 46-47 (JA 57-58) ("And at that point in time, basically, the defendant signs the consent form, giving back *the consent that he apparently had withdrawn when asked to sign the form*.") (emphasis added). Instead, the prosecution produced for the first time Buckingham's written consent form and argued the validity of that consent.[1]

Buckingham countered that, despite having signed the form, he had not provided valid consent for the search because his written consent was provided under coercive circumstances. First, he argued, his decision to sign the consent form was influenced by his perception that he was not otherwise free to leave the scene:

---

[1]The prosecution explained that it had not previously produced the consent form because it was unaware of the form prior to the suppression hearing.

> I really was looking for the point of where he's saying okay, you're – you know, you're free to go. I didn't want to just crank the car up and take off because, you know, I figured, well, if I did, then I'm just adding, you know, to the point where it would have put me in – jeopardized me, you know, and saying I was fleeing from the scene . . . .

Suppression Hr'g Tr. at 34-35 (JA 45-46); *cf. id.* at 23-24 (JA 36-37) (Officer Foren testifying that while he considered Buckingham "free to go" from the moment that his license was returned, Foren was not aware that anyone said so). Second, Buckingham argued, his decision was influenced by Foren's alleged statement (which Foren denies making) that he would search the car regardless of whether Buckingham signed the form. *See id.* at 33-34, 36, 39 (JA 44-45, 47, 50); *cf. id.* at 40 (JA 51).[2] As Buckingham's counsel summarized: "[H]e . . . felt that he really had no choice, that the search was going to be made anyway so he may as well get on with it. . . . [H]e felt he had no choice." Suppression Hr'g Tr. at 45, 48 (JA 56, 59).

Ruling from the bench, the district court denied defendant's motion to suppress. In doing so, the court focused entirely on defendant's initial, oral consent. The court never addressed either his arguable withdrawal of that consent or the issue of whether his subsequent, written consent was coerced or equivocal:

> The court finds without contradiction that the defendant gave oral consent to Mr. Foren to search the vehicle. The fact that he didn't want to sign the written consent is not the important issue. He gave oral consent. He ultimately did sign the written consent, but he had given oral consent, which was sufficient for the officers to search the vehicle.

Suppression Hr'g Tr. at 50 (JA 61).

Buckingham subsequently pled guilty and was sentenced to forty-eight months imprisonment and three years supervised release.

## II. DISCUSSION

On appeal, Buckingham argues that the district court erred in relying on his oral consent without considering whether he had withdrawn that consent. The prosecution counters that Buckingham forfeited the lack of consent argument by not presenting it before the district court and that, even if he did present the issue to the district court, that court correctly rejected that challenge (either because Buckingham did not withdraw his oral consent or because, if he did, his subsequent, written consent was valid).

We conclude that: (1) Buckingham has not forfeited his lack of consent argument, (2) the district court erred in relying on Buckingham's oral consent without considering whether he had withdrawn that consent, and (3) on this record the district court decision cannot be upheld on the alternative basis of Buckingham's subsequent, written consent. Accordingly, we vacate the judgment of conviction and remand for further proceedings, including a determination as to (1) whether Buckingham withdrew his oral consent and, if so, (2) the validity of his subsequent, written consent.

---

[2] Buckingham conceded that, at the time that he signed the consent form, "there hadn't been any threats made towards [him] by any of the[] officers," "[t]here weren't any guns drawn," and the various police officers "weren't like in a huddle around [him]." Suppression Hr'g Tr. at 37-38 (JA 48-49).

## A.        Standard of Review and Applicable Law.

We review the district court's factual findings for clear error and its conclusions of law de novo. *See United States v. Copeland*, 321 F.3d 582, 591 (6th Cir. 2003).

The law governing the disposition of this matter derives from this Court's interpretation of the Fourth Amendment in two principle cases. First, in *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999), this Court held that, in order to justify a search by consent, the government must prove that the consent was voluntary and unequivocal. *See id.* at 385-86 (requiring proof by "clear and positive testimony" that the asserted consent was "voluntary" and "unequivocally, specifically, and intelligently given") (quotation marks omitted). Second, in *Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999), this Court held that, even where a party has provided voluntary and unequivocal consent, that party may still retract his consent. *See id.* at 567 ("[T]he consenting party . . . at any moment may retract his consent.").

## B.        Whether Buckingham Forfeited His Lack of Consent Argument.

Contrary to the government's contention that Buckingham forfeited any challenge to the validity of his consent (oral or written), we are satisfied that he did contest that issue before the district court. While his written motion did not argue the invalidity of his consent, Buckingham raised the argument at the suppression hearing soon after the government introduced the consent theory and produced for the first time the written consent form. His counsel argued at the suppression hearing that Buckingham "felt that he really had no choice, that the search was going to be made anyway so he may as well get on with it." Suppression Hr'g Tr. at 45 (JA 56). Later at the same hearing, his counsel reaffirmed: "[I]t's our position, Your Honor, he felt he had no choice." *Id.* at 48 (JA 59). Buckingham thus fairly presented his lack of consent argument for district court decision.

## C.        Whether the District Court Erred in Denying Buckingham's Motion to Suppress.

### 1.        The District Court's Reliance on Buckingham's Oral Consent.

The district court erred in denying Buckingham's motion to suppress on the basis of his oral consent, without considering whether he withdrew that consent.

It is well-settled that "the consenting party . . . at any moment may retract his consent." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). In *Painter*, this Court considered plaintiff Robert Painter's civil suit against certain police officers. Painter had consented to the search of a tavern that he managed; as the suspicions of the searching officers intensified, however, he revoked that consent mid-search. The officers reacted by ordering that Painter submit to a body search. In reversing in part the district court's grant of summary judgment in favor of the defendant officers, this Court explained:

> [A]lthough the instant defendant officers had legitimately entered Lucky's pursuant to Painter's permission, and were conducting a legal consent search thereof, that search should have terminated instantly upon Painter's revocation of consent, and the officers should have promptly departed the premises (assuming they possessed no independent legal authority to remain).

*Id.*; *see also United States v. Mitchell*, 82 F.3d 146, 151 (7th Cir. 1996) ("Consent to search may, of course, be withdrawn or limited by a criminal suspect.").

The record provides support for Buckingham's argument that he withdrew his consent. First, Officer Foren's testimony suggests that Buckingham, when confronted with the officer's request for

written consent for the search, withdrew his oral consent: "A: . . . . [T]he other officer, . . . a senior patrolman, advised [Buckingham] it was a yes or no answer. He had the right to say yes. He had the right to say no as far as signing the form *or allowing consent*. Q: And what did [Buckingham] do then? A: He said no." Suppression Hr'g Tr. at 11-12 (JA 29-30) (emphasis added). Second, Officer Foren's actions following his exchange with Buckingham indicate that he understood that Buckingham had withdrawn the initial, oral consent to the vehicle search: Officer Foren did not proceed with his planned consent search of Buckingham's car; instead, he called for a contraband-sniffing dog in an apparent effort to obtain probable cause and thereby obviate the need for consent. Indeed, the government conceded before the district court that Buckingham's execution of the consent form "g[a]v[e] back the consent that he apparently had withdrawn when asked to sign the form." *Id.* at 46-47 (JA 57-58).

The district court nonetheless denied the motion to suppress, on the ground that Buckingham had orally consented, without addressing whether he withdrew that consent. Avoiding impermissible appellate fact-finding, we remand for further proceedings as to whether Buckingham withdrew his oral consent. *See, e.g.*, *Amadeo v. Zant*, 486 U.S. 214, 228 (1988) ("The District Court's lack of precision, however, is no excuse for the Court of Appeals to . . . engage in *impermissible appellate factfinding*.") (emphasis added).

## 2. Whether the District Court Ruling Can Be Affirmed on the Basis of Buckingham's Subsequent, Written Consent.

Before vacating and remanding, however, we consider whether the district court ruling can be affirmed on the basis of Buckingham's subsequent, written consent. While the district court did not rely on Buckingham's written consent, the government presses it as an alternative ground for affirming the district court. *See City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994) ("[W]e may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court.").

In order to justify a search by consent, the government must prove by "clear and positive testimony" that the asserted consent was "voluntary" and "unequivocally, specifically, and intelligently given." *United States v. Worley*, 193 F.3d 380, 385-86 (6th Cir. 1999) (quotation marks omitted). "A consent is suspect if given by one who earlier refused to consent, unless some reason appears to explain the change in position." Wayne R. LaFave et al., *Criminal Procedure* § 3.10(b) (2d ed. 1999).

We conclude that the record is insufficient for us to determine whether Buckingham's written consent itself was "voluntary" and "unequivocal[]." *Worley*, 193 F.3d at 385-86. On the one hand, the record includes testimony that: none of the officers present at the time Buckingham provided written consent had drawn their guns or otherwise threatened Buckingham, those officers were not huddled around Buckingham, Officer Foren had not threatened (as alleged by Buckingham) to search the vehicle regardless of Buckingham's consent, and Buckingham's consent may have reflected no more than his belief that, with the contraband-sniffing dog en route, "the jig was up." On the other hand, however, the record also includes testimony that: it was late at night, numerous officers and police vehicles with flashing lights were on the scene, Buckingham may have reasonably believed that he was not free to leave the scene, and Officer Foren stated that the car would be searched regardless of whether Buckingham consented to the search.[3] Other facts,

---

[3]For example, the *Worley* Court affirmed a district court invalidation of consent where it found that the defendant believed that he had to comply with a search request and merely acceded to a show of authority. As distinguished legal scholar Professor Wayne LaFave and his associates have observed: "One factor likely to produce a finding of no consent . . . is a claim by the police that they can make the search in any event." LaFave, *Criminal Procedure* § 3.10(b).

including Buckingham's withholding of written consent for four to five minutes even after Officer Foren called for the contraband-sniffing dog, might lend credence to either position. The district court, because it did not consider the validity of the written consent, did not make findings on these issues. Accordingly, we cannot affirm the district court decision on the basis of Buckingham's written consent *qua* written consent.

There is evidence that defendant casually, orally consented, withdrew that consent when asked to sign a written consent, and finally signed a written consent in circumstances not addressed by the district court. Accordingly, if the district court should reach this issue on remand (i.e., if it determines that Buckingham withdrew his oral consent), it should evaluate the final, written consent to determine whether, under the whole scenario from stop to search, that consent was voluntary and unequivocal.

## III. CONCLUSION

For the reasons set forth above, we VACATE Buckingham's conviction and sentence and REMAND for further proceedings consistent with this opinion.