NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0143n.06

No. 18-3240

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

WILLIAM TOTTEN,

     Defendant-Appellant.

**FILED**
Mar 22, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

BEFORE:    CLAY and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

    **CLAY, Circuit Judge.** Defendant William Totten pleaded guilty to Conspiracy to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846, and Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and received a 125-month sentence. On appeal, he claims that he is entitled to resentencing because he received ineffective assistance of counsel. For the reasons set forth below, we **DISMISS** Defendant's appeal.

## BACKGROUND

    Defendant was the "supplier" in a drug trafficking organization, and in this role he was "responsible for dispersing kilogram quantities of cocaine to street level dealers." (PSR ¶ 45.) An investigation revealed that Defendant "had been distributing ounce to kilogram size quantities of

---

    [*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

cocaine from 2010 to 2013 in the central Ohio area," and was involved in distributing between 15 and 50 kilograms of cocaine. (PSR ¶ 50.) Through confidential informants and surveillance, agents obtained sufficient evidence to obtain search warrants for two houses involved in the conspiracy, where they found significant amounts of cocaine, a firearm, cell phones, jewelry, digital scales, cash, and other indicia of drug trafficking.

On January 16, 2014, Defendant, along with several codefendants, was indicted on ten counts related to the trafficking organization. Ultimately, Defendant pleaded guilty to two counts: Conspiracy to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846, and Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The plea agreement into which Defendant entered on September 5, 2014 recognized that the conspiracy charge carried with it a mandatory minimum term of ten years. The agreement made clear that "[D]efendant is aware that the Court has not yet determined a sentence," that the court had authority to impose a sentence up to the statutory maximum, and that "any estimate of the probable sentencing range . . . that the defendant may have received from the defendant's counsel, the United States, or the probation office, is a prediction, not a promise." (R. 130, Plea Agreement, Page ID# 353.) The agreement also noted that the government could move the court for an appropriate departure that would have allowed the court to sentence Defendant below the statutory mandatory minimum.

Throughout these proceedings, Defendant was represented by retained counsel, Joseph D. Reed. Reed moved for a continuance three times between March 7, 2014 and June 4, 2014, and each time the government joined the motion.

At an August 12, 2014 scheduling conference, the district court noted that Reed "can be a little difficult to get ahold of at times because [he's] so busy" but noted that Reed was "well-

regarded here." (R. 222, 8/12/2014 Status Conf. Tr., Page ID# 706–07.) The plea hearing was scheduled for September 3. Reed was not present at the time scheduled for the sentencing hearing because, due to a "problem with [his] calendar," he believed the hearing was scheduled for the following week. (R. 229, 9/3/2014 Proceeding, Page ID# 816.) When the court telephoned Reed, he came directly to the courtroom, arriving roughly twenty minutes after the hearing had been scheduled to begin. Defendant stated that he had not seen Reed since the August 12 scheduling conference. Reed told the court that he and the government were still working out details of the plea agreement relating to property involved in the case. The plea hearing was rescheduled for September 5, 2014, and on that date Defendant entered into the plea agreement.

After moving for and receiving a fourth continuance, Reed filed a sentencing memorandum on February 3, 2015 seeking "[a] sentence in the same range as those of his Co-Defendants." (R. 171, Defendant's Sentencing Memo., Page ID# 511.) The government responded that Defendant should not receive a similar sentence because, among other reasons, Defendant had not "cooperated truthfully with the government early in [the] prosecution" like his codefendants had. (R. 172, Gov't Sentencing Memo., Page ID# 516.)

At the sentencing hearing on February 4, 2015, Defendant stated that he was not ready to proceed because he wished to retain a different lawyer. Defendant felt "that Mr. Reed didn't do his job to satisfaction," citing Reed's failure to appear on time at the September 3, 2014 hearing; Reed's failure to meet with Defendant since September 2014 (an allegation that Reed disputed); Reed's failure to provide Defendant with his Presentence Investigation Report ("PSR") until January 20, 2015; and Reed's failure to complete the sentencing memorandum until the day before the sentencing hearing. (R. 225, 2/4/2015 Sentencing Tr., Page ID# 745–46.)

Reed was replaced by Kevin Conners. At a status conference on February 8, 2017, Conners noted that Defendant's "initial plea was essentially uncounseled," that "there are a number of things that happened [and] didn't happen where I think Mr. Totten could have benefited substantially, whether with assistance from the government or otherwise, in his plea that just didn't happen [because Reed] just did not take those efforts." (R. 226, 2/8/2017 Status Conf. Tr., Page ID# 762.) Conners raised the fact that the other defendants in the case had received "dramatically lower sentences" than the sentence contemplated by the PSR for Defendant. (*Id.*, Page ID# 763.) The government reiterated that during the summer 2014 interview, Defendant did not tell the truth to the government and that it "was way late in the game as it was" when Defendant spoke to the government compared to the other defendants in the case. (*Id.*, Page ID# 766.) The conference ended with the court allowing Conners thirty days to file any motions he wanted to file. Conners did not file any motions.

On March 8, 2018, a sentencing hearing was held, and the district court imposed a 125-month sentence.

## DISCUSSION

Defendant argues that Reed rendered ineffective assistance of counsel resulting in prejudice to Defendant. Defendant believes that "because the prejudice in his case resulted in application of the mandatory minimum, the appropriate remedy is to not apply the mandatory minimum and allow the trial court to weigh an appropriate sentence without that limitation." (Appellant's Br. 17.)

### Preservation of the Issue & Standard of Review

The government and Defendant disagree about whether this issue was preserved for appeal. Defendant argues that he preserved the issue of whether Reed provided ineffective assistance of

counsel but admits that he did not preserve the issue of what remedy is proper. The government argues that Defendant did not preserve the ineffective-assistance-of-counsel claim, which is being raised for the first time on appeal. The government is correct.

Conners raised some issues relating to Reed's performance at the February 8, 2017 status conference; however, he did not file a motion in connection with these statements (as the court allowed him thirty days to do) or even note a formal objection. Conners' statements alone are insufficient to preserve the issue on appeal. This Court "ha[s] held that litigants may preserve an argument in the district court by 'rais[ing]' it for the first time at a hearing, even when they neglected to make the argument in a pre-hearing filing." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009) (second alteration in original) (quoting *United States v. Buckingham*, 433 F.3d 508, 512 (6th Cir. 2006)). This Court has elaborated on what it means to "raise" an issue:

> At a minimum, a litigant must state the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue. Yet notice by itself does not suffice. Otherwise, a litigant could preserve an issue merely by summarily mentioning it, and we know that conclusory allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument, do not meet this standard.

*Id.* (citations omitted).

In this case, Defendant at most summarily mentioned the issue. Defendant's statements at the status conference were unaccompanied by citations, contained no real effort at legal argument, and did not once mention the phrase "ineffective assistance of counsel." *See Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir. 1995) ("[V]ague references fail to clearly present [an] objection in the district court so as to preserve the issue for appellate review."). The district court gave Defendant thirty days to submit any motions he might want to file, and he chose not to file any. It is not clear that the government was on notice

as to a potential ineffective-assistance-of-counsel claim, and the issue was certainly never before the district court to decide. Because Defendant did not in any way develop these arguments with factual or legal arguments (despite an invitation to do so by the court), this argument was not preserved for appeal. *See Tele-Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("Propounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values. . . . [W]e should not be considered a 'second-shot' forum . . . where secondary, back-up theories may be mounted for the first time.").

Because this argument was not raised below, this Court reviews for plain error. *United States v. Dedman*, 527 F.3d 577, 591 (6th Cir. 2008) ("While constitutional challenges are typically reviewed de novo, when the argument was not raised at the district court 'Sixth Circuit precedent requires application of the plain error standard.'" (quoting *United States v. Barton*, 455 F.3d 649, 652 (6th Cir. 2006))).

**Analysis**

An ineffective assistance of counsel claim requires a defendant to show that his counsel's performance was deficient and that the defendant was prejudiced as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance means conduct that "fell below an objective standard of reasonableness," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89. "To demonstrate deficient performance, a petitioner must 'show[] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 843–44 (6th Cir. 2017) (alteration in original) (quoting *Strickland*, 466 U.S. at 687).

The government argues that because this claim is being raised for the first time on appeal, this Court should not review it at all. This Court has explained:

> Ineffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail. This Court typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record.

*United States v. Lopez–Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (citations omitted). This Court considers what record evidence is available to explain why defense counsel made the decisions that were allegedly deficient performance. *See id.*; *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005) ("The record contains no evidence regarding what advice, if any, [defendant's] counsel provided with regard to the potential drug-quantity enhancement.").

In this case, the evidence of record concerning Reed's performance is limited, and more evidence is needed to decide whether Reed was ineffective.

Defendant argues that Reed was deficient because he did not adequately prepare Defendant for the interview with the government that occurred in the summer of 2014. However, there is no record evidence to back up these assertions. Reed never testified as to how he prepared Defendant for the session and why he made the choices he did. Defendant himself never described the preparation he received, if any. It is true that the government stated that "Reed probably did not spend the time with Mr. Totten that he should have in getting him ready for [the interview]," (R. 226, 2/8/2017 Status Conf. Tr., Page ID# 766), but this speculation by the government does not make it "apparent from the existing record" that Reed was ineffective. *Lopez–Medina*, 461 F.3d at 737. More information is needed to assess Defendant's claim.

Defendant also points to Reed's admission that certain of Defendant's complaints about him were correct. However, it is not clear from the record what Reed was admitting, and it was

not clear that the alleged deficiencies constitute ineffective assistance of counsel.  At the February 4, 2015 sentencing hearing, Defendant stated that he did not receive his PSR until January 20, 2015; that Reed had not completed the sentencing memorandum until the day before the sentencing hearing; and that he had not seen Reed since September 2014.  Although Reed said that "Mr. Totten's complaints are correct" and admitted that he had "neglected to spend sufficient time with [Defendant]," (R. 225, 2/4/2015 Sentencing Tr., Page ID# 746), it is not clear whether Reed was admitting to each specific allegation Defendant made against him or whether he agreed only with the general sentiment that he could have spent more time with Defendant.  This is not an admission that Reed had provided ineffective assistance of counsel, as Defendant argues.

Nothing in the record explains why Defendant did not get the PSR (which was prepared in late September) until January,[1] nor why Reed filed the sentencing memorandum when he did.  As to Defendant's conceptually similar argument about Reed's failure to furnish him with copies of evidence obtained during discovery, the record does not explain what that evidence was, why it was important to Defendant's case, or why Reed failed to provide it.  Without knowing why Reed did what he did, it is not possible to decide whether or not Reed was ineffective.  *See Lopez-Medina*, 461 F.3d at 737 ("The record contains no evidence regarding why, for example, defense counsel chose not to file any additional motions beyond his initial motion to suppress or why he chose not to challenge the agents as experts on matters pertaining to narcotics trade.").

It is true that Reed was late to the September 3, 2014 proceeding and attributed this to a calendar problem that led him to believe the proceeding was scheduled for the following week.  Based on the record before this Court, Reed's arriving twenty minutes late to one hearing is not

---

[1] At one point, Reed vaguely attributed this to "an error" on his part, but it is not clear what the nature of this error was.

by itself the sort of error that is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Leonard*, 846 F.3d at 843–44 (quoting *Strickland*, 466 U.S. at 687).

Finally, while Defendant stated that he had not seen Reed in several months, Reed said during the same hearing that he had seen Defendant "in the last two weeks about five or six times to go over the presentence report and discuss his objections to them." (R. 225, 2/4/2015 Sentencing Tr., Page ID# 746.)  There is thus a factual dispute as to how frequently Defendant and Reed were meeting in the weeks before the sentencing hearing.  These sorts of disputes are better decided in the first instance by the district court on post-conviction review.  If this Court believes Reed about how frequently he met with Defendant, it is far from apparent from the existing record that Reed was ineffective, given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

None of this is to suggest that we believe that Reed was effective as counsel.  There remain significant questions as to Reed's performance.  However, because this is not the "rare case[] where the error is apparent from the existing record," *Lopez–Medina*, 461 F.3d at 737, these questions should be dealt with in the first instance by a district court after the submission of evidence.  Defendant will be able to fully litigate this issue in the more suitable context of a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255. Thus, we decline to review Defendant's ineffective-assistance-of-counsel claim, as it is not ripe for review.

For the reasons stated above, we **DISMISS** Defendant's appeal.